(No. 59341
(No. 59350

TERRY MIDGETT *et al.*, Appellees, v. SACKETT-CHI-CAGO, INC., *et al.*, Appellants.—JOSE ISABEL GONZALEZ *et al.*, Appellants, v. PRESTRESS EN-GINEERING CORPORATION, Appellee.

*Opinion filed October 19, 1984.—Rehearing denied February 1, 1985.*

MORAN, J., RYAN, C.J., and UNDERWOOD, J., dissenting.

Benjamin P. Hyink and Lawrence M. Liebman, of Drugas, Maione, Morgan & Hyink, of Chicago, for appellants.

Nicholas T. Kitsos, of Nicholas T. Kitsos & Associates, of Chicago, for appellees.

Emmanuel F. Guyon, of Streator, for appellants.

Julie Badel, of McDermott, Will & Emery, of Chicago, for appellee.

JUSTICE WARD delivered the opinion of the court:

These consolidated appeals concern the question of claimed retaliatory discharges of employees. The plaintiff in cause No. 59341, Terry Midgett, filed a complaint in the circuit court of Cook County alleging that he was unjustly discharged by his employer, Sackett-Chicago, in retaliation for his filing a claim with the Industrial Commission under the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*). Jose Gonzalez and John Repyak, plaintiffs in cause No. 59350, filed separate complaints in the circuit court of Living-

ston County alleging that their employer, Prestress Engineering, discharged them in retaliation for their filing workers' compensation claims under the Act. In all three cases the trial courts granted the employers' motions to dismiss the complaints for failure to state a cause of action. The appellate court in the fourth district consolidated the Gonzalez and Repyak appeals and in a Rule 23 order (87 Ill. 2d R. 23) affirmed the trial courts' dismissal of each complaint. (*Gonzalez v. Prestress Engineering Corp.* (1983), 118 Ill. App. 3d 1167.) The appellate court in the first district, however, reversed the trial court in *Midgett,* holding that a cause of action was stated. (*Midgett v. Sackett-Chicago* (1983), 118 Ill. App. 3d 7.) We allowed a petition of Gonzalez and Repyak for leave to appeal from the fourth district judgment in *Gonzalez* (cause No. 59350) and allowed the petition of the defendant Sackett-Chicago for leave to appeal from the first district judgment in *Midgett* (cause No. 59341), under our Rule 315 (87 Ill. 2d R. 315). The appeals were consolidated for review.

In cause No. 59341 Terry Midgett, who was injured on January 31, 1979, in the course of his employment with Sackett-Chicago, filed a workers' compensation claim with the Industrial Commission. The claim was still pending when Midgett was discharged from his employment by Sackett in January 1980. Sackett reached a settlement of the claim with Midgett in August 1980. On December 31, 1980, Midgett, claiming a retaliatory discharge, filed an action in tort in his own name and on behalf of his wife and minor children, seeking compensatory and punitive damages against Sackett. Sackett moved to dismiss, stating that Midgett was a union member covered by a collective-bargaining agreement with specific grievance provisions for the arbitration of disputes, under which an arbitrator would determine if a discharge from employment was for "just cause." Sack-

ett argued that Midgett, who had not filed a grievance, was limited to contract remedies under the agreement and had no cause of action in tort. Midgett filed cross-motions that in part alleged that the union and Sackett had prevented Midgett from filing a grievance for his discharge. The trial court dismissed Midgett's complaint.

In cause No. 59350 Gonzalez, in August 1981, filed a workers' compensation claim after suffering an injury while employed by Prestress Engineering. On August 23, 1982, an Industrial Commission arbitrator denied compensation on the ground that plaintiff's injury did not arise out of and in the course of his employment. Gonzalez was discharged on September 20, 1982, and he later filed his tort claim for retaliatory discharge against Prestress.

Plaintiff Repyak was also injured at defendant Prestress' plant and in July 1981 was awarded certain benefits under the Workers' Compensation Act. His employment by Prestress was terminated October 6, 1982, and he, too, filed a retaliatory-discharge action against Prestress. Repyak alleged in count II of his complaint that he and his wife, Elsie Repyak, were denied pension benefits because of his discharge approximately one year before his pension vested. Both employees were union members and were covered by a collective-bargaining agreement between the local and Prestress, with grievance procedures requiring "just cause" for an employee's discharge. Neither Gonzalez nor Repyak filed a grievance against the employer. The motions of Prestress to dismiss the complaints were granted.

The appellate court in the fourth district affirmed the Gonzalez and Repyak dismissals (118 Ill. App. 3d 1167), reasoning that, since the plaintiffs were union members protected by the collective-bargaining agreement and not employees at will, they could not bring a cause of action for retaliatory discharge as described in *Kelsay v. Mo-*

*torola, Inc.* (1978), 74 Ill. 2d 172. Instead they were required to pursue and exhaust their grievance remedies under the agreement. The appellate court in the first district, in reversing the dismissal of Midgett's complaint (118 Ill. App. 3d 7), held that the tort of retaliatory discharge extended to union employees covered by such a collective-bargaining agreement in order to promote the strong public policy to favor protection of employees who exercise their rights under the Act, whether the employees are members of a union or not.

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, this court held there was a remedy in tort for employees who were discharged in retaliation for filing workers' compensation claims. Otherwise employers could coerce employees to forgo their rights under the Act by threatening to terminate, or by actually discharging, employees who claimed compensation for industrial injuries. This remedy implements the public policy underlying the Act of providing employees an effective and equitable means to seek compensation for injuries sustained in the course of their employment without fear or risk of losing their jobs. In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, an employee was terminated for informing police of suspected criminal activities of his coworkers. In holding that the tort of retaliatory discharge was applicable we stated:

> "The foundation of the tort of retaliatory discharge lies in the protection of public policy, and there is a clear public policy favoring investigation and prosecution of criminal offenses.
>
> * * *
>
> All that is required [to bring a cause of action] is that the employer discharge the employee in retaliation for the employee's activities, and that the discharge be in contravention of a clearly mandated public policy." 85 Ill. 2d 124, 133-34.

The defendants here, however, argue that the action for retaliatory discharge was created to protect only "at-will" employees, such as those involved in *Kelsay* and *Palmateer*, who would otherwise be without a remedy for a vengeful discharge. The plaintiffs here are not "at-will" employees but are union members, protected by collective-bargaining agreements which provide specific grievance procedures to ensure discharge from employment only for "just cause." Since the plaintiffs here have a remedy through the union agreement, the defendants argue that the rationale in *Kelsay* is not involved and that the dismissal of plaintiffs' complaints was proper. The defendants cite other decisions of the appellate court that support their argument: *Mouser v. Granite City Steel Division of National Steel Corp.* (1984), 121 Ill. App. 3d 834; *Suddreth v. Caterpillar Tractor Co.* (1983), 114 Ill. App. 3d 396; *Deatrick v. Funk Seeds International* (1982), 109 Ill. App. 3d 998; *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402.

Emphasizing that the employees in *Kelsay* and *Palmateer* were at-will employees, they cite, too, *Lamb v. Briggs Manufacturing* (7th Cir. 1983), 700 F.2d 1092, which held that union employees under collective-bargaining agreements could not maintain an action for retaliatory discharge. We consider, however, that in order to provide a complete remedy it is necessary that the victim of a retaliatory discharge be given an action in tort, independent of any contract remedy the employee may have based on the collective-bargaining agreement. In *Kelsay*, an essential factor in providing the action for retaliatory discharge was a recognition of the importance of permitting the allowance of punitive damages against the offending employer. This court stated:

> "In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee

for filing a workmen's compensation claim *** The imposition on the employer of the small additional obligation to pay a wrongfully discharged employee compensation would do little to discourage the practice of retaliatory discharge, which mocks the public policy of this State *** In the absence of other effective means of deterrence, punitive damages must be permitted ***." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186-87.)

Applying this reasoning here, there is no reason to afford a tort remedy to at-will employees but to limit union members to contractual remedies under their collective-bargaining agreements. (*Wyatt v. Jewel Cos.* (1982), 108 Ill. App. 3d 840, 841-42.) Generally, if a union employee's grievance goes to arbitration and the arbitrator does not find just cause for the employee's discharge, the remedy will be simply job reinstatement and full back pay. (See Silzer, *Workers' Compensation: Retaliatory Discharge of Employes Covered by a Collective Bargaining Agreement* (1981), 70 Ill. B.J. 164, 166.) If there is no possibility that an employer can be liable in punitive damages, not only has the employee been afforded an incomplete remedy, but there is no available sanction against a violator of an important public policy of this State. It would be unreasonable to immunize from punitive damages an employer who unjustly discharges a union employee, while allowing the imposition of punitive damages against an employer who unfairly terminates a nonunion employee. The public policy against retaliatory discharges applies with equal force in both situations. (That Illinois has a strong public policy to insure the protection of workers covered by the Workers' Compensation Act is clear. Section 6 of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.6) requires employers to post printed notices containing information concerning the Act which is necessary to aid employees to safeguard their rights under the Act in the event of injury. Employers are required to file reports of injuries and other matters with the Commis-

sion, and the failure to do so constitutes a petty offense. Section 26 (Ill. Rev. Stat. 1981, ch. 48, par. 138.26) provides that in the event of any violation of the Act, which is declared to be a petty offense, the Attorney General and the State's Attorney of each county, upon the request of the Industrial Commission, shall enforce the penalties prescribed in the Act.)

The defendants argue that if union employees are allowed the tort action recognized in *Kelsay*, it would be violative of the Federal labor-law policy for industrial stability through the use of arbitration in union agreements. The argument is unconvincing. We cannot see any perceptible effect on the use of arbitration. There is an important public interest in protecting the rights of workers under the Act, and in deterring unscrupulous employers from discharging employees. The appellate court observed in *Midgett*:

> "[T]he recognition of a cause of action in tort merely allows an employee an additional remedy in areas where strong public policies, as opposed to purely private interests, are involved. Such an alternative is especially necessary and desirable in a case such as this where there has been an allegation of collusion between the union and the employer." *Midgett v. Sackett-Chicago, Inc.* (1983), 118 Ill. App. 3d 7, 9.

In light of defendants' argument regarding a Federal policy favoring arbitration, it is interesting to note that the Supreme Court has allowed employees, covered under a collective-bargaining agreement with an arbitration provision, to bring claims against employers that are founded upon violations of Federal statutory rights, such as violations of civil rights (*McDonald v. City of West Branch* (1984), 466 U.S. 284, 80 L. Ed. 2d 302, 104 S. Ct. 1799), racial discrimination (*Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011), and violations of the Fair Labor Standards Act (*Barrentine v. Arkansas-Best Freight System, Inc.* (1981), 450 U.S. 728,

67 L. Ed. 2d 641, 101 S. Ct. 1437).

Our conclusion that employees like the ones here are not limited to contractual remedies available under collective-bargaining agreements has been reached in other jurisdictions. See *Puchert v. Agsalud* (1984), ___ Hawaii ___, 677 P.2d 449; *Peabody Galion v. Dollar* (10th Cir. 1981), 666 F.2d 1309; *Carnation Co. v. Borner* (Tex. 1980), 610 S.W.2d 450; *Vaughn v. Pacific Northwest Bell Telephone Co.* (1980), 289 Or. 73, 85-89, 611 P.2d 281, 287-90; *Judson Steel Corp. v. Workers' Compensation Appeals Board* (1978), 22 Cal. 3d 658, 586 P.2d 564, 150 Cal. Rptr. 250.

Sackett contends that Midgett's complaint was properly dismissed because he alleged no facts in his supporting affidavits, such as the exhaustion of grievance procedures, to sustain a cause of action. A plaintiff, however, need not plead the exhaustion of contract remedies to bring an action in tort. As was stated in *Palmateer*, the plaintiff must allege a retaliatory discharge and that the discharge violated a clear public policy. Midgett did this, and thus a cause of action was stated. Midgett, however, did not appeal the dismissal of his wife and children as plaintiffs. Those portions of the appellate and circuit court judgments dismissing them as party plaintiffs are, thus, to be left undisturbed.

John Repyak and his wife claim that, due to his discharge, they have an independent cause of action to recover his pension rights which were lost upon his discharge, which occurred one year and four months before they would have vested. Their complaint, however, alleges that Repyak was discharged because he filed a workers' compensation claim and not because the employer wished to defeat his pension rights. The loss of pension rights would be a consequence of his discharge, and he may allege it as an element of damages in a retaliatory-discharge action against his employer.

Prestress, in cause No. 59350, filed a motion in this

court to strike certain documents in Gonzalez' brief and the references to them, which motion was taken with the case. The documents in question were not made part of the record on appeal. Too, they were not before the trial court or the appellate court, and Prestress' motion to strike is allowed.

Midgett also filed a motion to strike portions of defendant Sackett's brief. This motion was also taken with the case. Midgett argues that those portions of the brief raise issues which were not raised in the trial court or in the appellate court and that Sackett has waived those issues for review here. After reviewing Sackett's briefs, we have determined that Sackett did not earlier raise the issue of Federal preemption. We therefore allow Midgett's motion to strike as to the portion of the brief discussing this issue.

For the reasons given, the judgment of the appellate court in cause No. 59341 is affirmed; the judgment of the appellate court and the judgments of the circuit court of Livingston County in cause No. 59350 are reversed and the causes are remanded to the circuit court for proceedings consistent with this opinion.

*59341 — Judgment affirmed.*
*59350 — Judgments reversed;*
*cause remanded.*

JUSTICE MORAN, dissenting:

In *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 181, this court found that an "employer's otherwise absolute power to terminate an employee at will should [not] prevail when that power is exercised to prevent the employee from asserting his statutory rights under the Workmen's Compensation Act." In recognizing the tort of retaliatory discharge, the court created what was to be a narrow exception to the general rule that " 'at-will' employment is terminable at any time for any or no cause." (*Palmateer v.*

*International Harvester Co.* (1981), 85 Ill. 2d 124, 128.) The court found this necessary to insure that at-will employees would be able to freely exercise their rights under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) without the risk of a retaliatory discharge by an employer against whom the employee had no recourse.

All of the plaintiffs in the consolidated cases here under review were covered by collective-bargaining agreements containing grievance procedures for the determination of whether a discharge from employment was for just cause. Nevertheless, none of the plaintiffs utilized those procedures when pursuing their wrongful-discharge claims. All initially filed civil tort claims for retaliatory discharge against their employers. The majority opinion holds that an employee covered by a collective-bargaining agreement may bring "an action in tort, independent of any contract remedy." (105 Ill. 2d at 149.) In so doing, the court has turned the narrow exception of *Kelsay* into a general rule, applicable not only to at-will employees but also employees covered by a collective-bargaining agreement barring discharge of employees other than for just cause. As such, any employee, even if discharged for just cause, may now bring a civil action, sounding in tort, against his employer regardless of the fact that he voluntarily agreed to be bound by a collective-bargaining agreement providing procedures for handling the grievances of discharged employees. Further, under the facts of the instant case, the employee may file his civil action without first exhausting, or even initiating, his contractual remedies pursuant to the grievance procedures set forth in the collective-bargaining agreement.

By extending the tort of retaliatory discharge in such a sweeping manner, today's opinion completely overlooks the specific policy consideration the court was confronted with when it recognized the tort of retaliatory discharge in *Kel-*

*say.* In making the tort available to the at-will employee, the court, in *Kelsay,* provided a viable means for such employees to seek compensation under the Act without the threat that, in so doing, they would be sacrificing their job. The employee covered by a collective-bargaining agreement, requiring that just cause be shown in order to discharge a covered employee, is not faced with the same dilemma. As the appellate court noted in *Cook v. Caterpillar Tractor Co.* (1980), 85 Ill. App. 3d 402, 405-06, "the concept of retaliatory discharge is subsumed within the just-cause provision and is within the power of the arbitrator to consider when determining if a discharge is for just cause." Clearly, a finding that an employee has been discharged in retaliation for claiming rights guaranteed under the Act would rule out a finding of a discharge for just cause. Thus, an employee covered by such an agreement may apply for benefits under the Act knowing that a discharge in retaliation for exercising such statutory rights could be vindicated by following the arbitration procedures provided for in the collective-bargaining agreement.

The majority states that allowing union employees the benefit of the tort of retaliatory discharge will not have "any perceptible effect on the use of arbitration." (105 Ill. 2d at 151.) I cannot agree. As the appellate court in *Cook* correctly observed, "[t]o permit an employee to circumvent procedures mutually agreed upon for handling grievances by filing suit in the first instance would undermine the collective bargaining agreement." 85 Ill. App. 3d 402, 406.

In *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 13 L. Ed. 2d 580, 85 S. Ct. 614, the Supreme Court reached the same conclusion when considering a situation wherein an employee covered by a collective-bargaining agreement brought a civil action against his employer for severance pay, without pursuing the grievance procedures outlined in his collective-bargaining agreement. In finding that the employee was barred from suing his employer for

severance pay because of his failure to follow the grievance procedures, the court stated:

> "A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' [Citation.]" 379 U.S. 650, 653, 13 L. Ed. 2d 580, 583-84, 85 S. Ct. 614, 616-17.

As the majority correctly observes, the *Kelsay* decision is significant in recognizing the importance of punitive damages as a deterrent to the offending employer. While I agree that an employer who unjustly discharges a union employee should not be immunized from punitive damages, I cannot agree that the expectations created by the collective-bargaining agreement should be entirely overlooked by allowing the union employee to completely circumvent the mutually agreed upon grievance procedures. Requiring union members to exhaust their contract remedies is part of the trade-off such employees accept in exchange for the many rights that they benefit from—rights not enjoyed by the employee at will. As such, union employees alleging retaliatory discharge should only be allowed to pursue a civil action in very limited situations. Specifically, the discharged union employee should be allowed to pursue the civil tort action, as recognized in *Kelsay,* when he has followed the appropriate grievance procedures and the arbitrator has made a finding of retaliatory motivation. On the other hand, if the arbitrator finds that the employee has been discharged for just cause, the employee should be precluded from pursuing a civil action, absent the existence of

extraordinary circumstances such as collusion between the union and the employer. (See *Vaca v. Sipes* (1967), 386 U.S. 171, 185, 17 L. Ed. 842, 855, 87 S. Ct. 903, 914.) However, bare allegations of collusion, without alleging facts to support such conclusion, are not sufficient to transform an otherwise barred claim into an allowable civil action.

Plaintiff Midgett's claims of collusion were not included in his complaint. In its motion to dismiss Midgett's complaint, the defendant argued that the complaint failed to state a cause of action because Midgett did not pursue the administrative remedies he was bound to follow under the terms of the collective-bargaining agreement. In affidavits filed by Midgett, in support of his opposition to the motion to dismiss, he first alleged collusion and fraudulent misrepresentations by and between the union and the defendant employer. As such, he maintained that he was denied the opportunity to pursue his claim of retaliatory discharge through grievance procedures. These allegations, however, are merely conclusory statements, without supporting facts. Therefore, I find Midgett's claim of collusion insufficient to entitle him to institute a civil tort action against his employer.

For the reasons stated above, I respectfully dissent from the majority opinion.

RYAN, C.J., and UNDERWOOD, J., join in this dissent.