Michael BUSA and Steven
Mpistolarides, Plaintiffs,

v.

Eugene BARNES, Defendant.

Peter LOGISIOS, Plaintiff,

v.

Eugene BARNES, Defendant.

Nos. 84 C 6525, 84 C 10358.

United States District Court,
N.D. Illinois, E.D.

May 20, 1986.

Charles A. Linn, Arnold & Kadjan, Chicago, Ill., for plaintiff.

James D. Montgomery, Corp. Counsel, Mary L. Smith, Arthur N. Christie, Asst. Corp. Counsels, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

The Defendant, Eugene Barnes (BARNES), moves to dismiss (*see* Fed.R. Civ.P. 12(b)(6)) Counts II through IV of the third amended Complaint.[1] For the following reasons, Barnes' motion to dismiss is

---

1. Neither party addresses the propriety of subject matter jurisdiction in this lawsuit. The third amended complaint states jurisdiction is proper under 28 U.S.C. § 1331 (federal ques-

granted in part and denied in part. A narration of the relevant allegations contained in the third amended complaint[2] precedes a discussion of the merits.

The Plaintiffs, Michael Busa and Steven Mpistolarides (PLAINTIFFS), in this consolidated suit allege they were discharged from positions with the Department of Sewers (DEPARTMENT) by Barnes for political reasons. Busa was employed by Department as a bricklayer from July 1, 1980 through June 29, 1984. Mpistolarides held a laborer's position from 1978 through June 29, 1984. Barnes is the Commissioner of Department.

Despite competent performance in their positions, both Plaintiffs were fired on June 29, 1984 by Barnes. Count I alleges the firings violated the Shakman Consent Order entered by this Court in *Shakman v. Democratic Organization of Cook County*, slip op. 69 C 2145 (N.D.Ill. May 5, 1972) because both firings were motivated by political reasons. The sufficiency of Count I is not an issue on this motion to dismiss.

Count II alleges the discharges initiated by Barnes also violates 42 U.S.C. § 1983. Section 1983 provides a vehicle for vindication of federal constitutional and statutory rights. Plaintiffs allege that a discharge for political reasons violates rights secured by the First Amendment and made applicable to the states through the Fourteenth Amendment (the rights to free speech and political association). *See generally Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In his motion to dismiss, Barnes does not attack the substance of Plaintiffs' First Amendment theory. He does, however, attack the various legal prerequisites necessary to the maintenance of a § 1983 claim against a public official in his official capacity.

Counts III and IV are pendent state law claims. In Count III, Plaintiffs allege their discharges violated the Personnel Code of the City of Chicago. Count IV sounds in tort (retaliatory discharge).

#### A. *Count II: Section 1983*

■ Barnes is sued in his official capacity. A suit against a public official in his official capacity imposes liability upon the municipality which he represents. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). Thus, because liability will ultimately be imposed on a municipal entity, Plaintiffs must plead and prove the existence of a municipal custom, policy or practice which caused their injuries. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) (forbidding municipal liability under § 1983 predicated on the doctrine of *respondeat superior*).

■ Barnes contends Count II should be dismissed because Plaintiffs fail to adequately allege the existence of a municipal custom, policy or practice. The Supreme Court's recent decision in *Pembaur v. City of Cincinnati*, —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), negates Barnes' contention. *Pembaur* recognized that a single act of a municipal official, if that official has the authority to make policy, may pave the way to § 1983 liability. *Id.*, 106 S.Ct. at 1298–1300. Accordingly, Plaintiffs will be entitled to relief if they are able to prove what they allege—that Barnes was delegated authority to make final decisions regarding the employment of Department employees and those decisions violated Plaintiffs' federal civil rights. *See id.* at 1301. Barnes' motion to dismiss Count II is denied.

#### B. *Count III: Personnel Code*

Count III is premised on the Personnel Code of the City of Chicago, Rule IX, § 2

---

tion) and 28 U.S.C. § 1343(a)(3) (civil rights). That jurisdictional statement is adequate because Count I and II contain federal civil rights claims premised on the Constitution and federal statute.

**2.** For the purposes of a Rule 12(b)(6) motion to dismiss all relevant allegations contained in the third amended Complaint are taken as true. And the Plaintiffs are granted the benefit of all favorable inferences (but only reasonable inferences) flowing from those allegations. *See Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984).

(CODE). Code Section 2 establishes a probationary term (six months) for City employees. The probationary period requirement became effective January 1, 1984. Completion of the probationary period entitles a City employee to the relative permanency of "career service status."

▮ Plaintiff's concede they were discharged during their probationary period. Nevertheless, they contend Code Section 2 implicitly restricts the discharge of probationary employees to the conduct of an employee during the probationary period. The Court disagrees. Neither the language of section 2, nor the logic of the Code itself, supports such a reading. Moreover, Plaintiffs' reading of section 2 is inconsistent with the section it precedes (Rule IX, § 3). That section allows the City to discharge probationary employees at will. Accordingly, the Court finds Rule IX, § 2 offers Plaintiffs no source for relief in this lawsuit and the motion to dismiss Count III must be granted.

### C. Count IV: Retaliatory Discharge

▮ Count III is a pendent state law claim for retaliatory discharge. *See generally Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421

N.E.2d 876 (1981); *Kelsay v. Motorola Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The tort has two elements: a plaintiff must plead and prove his 1) discharge was in retaliation for his activities and 2) the discharge contravened a clearly mandated public policy. *Palmateer,* 52 Ill.Dec. at 18, 421 N.E.2d at 881; *see also Price v. Carmack Datsun, Inc.,* 109 Ill.2d 65, 92 Ill.Dec. 548, 549, 485 N.E.2d 359, 360 (1985). Plaintiffs claim Barnes discharged them because of their political affiliation in violation of the public policy of the State of Illinois. Plaintiffs contend the relevant public policy basis for the tort is stated in the Illinois Constitution. *See* Ill. Const. Art. I §§ 4, 5.[3] Barnes argues the Court should not conclude Plaintiffs state a claim under Illinois law because to do so would constitute an unwarranted extension of the tort. Both parties agree that no Illinois court has addressed the particular issue presented to this Court.[4]

In recognizing the tort of retaliatory discharge, the Illinois Supreme Court was motivated by a concern for remedyless plaintiffs who could be victimized by a defendant's ostensibly legal employment decisions

---

**3.** Among other things, sections 4 and 5 address the freedoms of speech and association. The Illinois Supreme Court, albeit in *dicta,* has apparently recognized that the Illinois constitution states the public policy of the State of Illinois. *See Barr v. Kelso-Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 631, 478 N.E.2d 1254, 1257 (1985). But, as becomes clear in the text, the existence of a state public policy does not automatically compel recognition of the tort of retaliatory discharge.

**4.** Barnes insists at least two issues are presented by Count IV. First, Barnes doubts whether the provisions of Illinois Constitution identified by Plaintiffs can serve as the public policy basis for the tort. That seems a non-issue in light of *Palmateer* and *Barr. Palmateer* recognized that a policy basis for the tort may have its root in a statute, a constitutional provision or in caselaw. *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878, (1981). And *Barr,* in *dicta,* recognized that Article I § 4 mandated a public policy. *Barr,* 88 Ill.Dec. at 631, 478 N.E.2d at 1257. There is no suggestion, however, from either party that the

protections of the Illinois Constitution extend beyond those of the First Amendment. *See generally, Elrod,* 96 S.Ct. at 2680 (examining First Amendment protections in patronage context).

The second issue suggested by Barnes is more substantial. Assuming the cited constitutional provisions mandate a public policy basis for the tort, Barnes posits whether the *Kelsay* Court intended the recognition of the tort when other alternate remedies exist. The remainder of this opinion answers that issue with a qualified yes: the Illinois Supreme Court seems willing to recognize the tort of retaliatory discharge when to do so would further the policy goals stated in *Kelsay. See, e.g., Wheeler v. Caterpillar Tractor Co.,* 108 Ill.2d 502, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985); *Midgett v. Sackett-Chicago, Inc.,* 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984). *See also Powers v. Delnor Hospital,* 135 Ill.App.3d 317, 90 Ill.Dec. 168, 172, 481 N.E.2d 968, 972 (2d Dist.1985); *Mein v. Masonite Corp.,* 124 Ill.App.3d 617, 80 Ill.Dec. 154, 155, 464 N.E.2d 1137, 1138 (1st Dist.1984). *See generally* Note, *Midgett v. Sackett-Chicago: A Union Employee's Modern Day Giant Against Retaliatory Discharge,* 19 J.Mar.L.Rev. 147 (1985).

which violated established public policy. That predicament was especially clear in *Kelsay*.

*Kelsay* involved a worker who suffered a minor on-the-job injury. She informed her employer of her intention to file a compensation claim. After informing the worker of its policy to discharge workers who file such claims, she went ahead and filed her claim anyway. The employer fired her. The *Kelsay* Court noted the exhaustive framework of the Workmen's Compensation Act was designed to render humane, efficient and fair compensation to injured workers. Therefore, to allow an employer to discharge a worker for using the act presented two problems: 1) employees would be left without a remedy and 2) employers would be able to sidestep their legal obligations. Both of those results presented public policy dilemmas for the Court. Recognition of the tort of retaliatory discharge avoided a public policy dilemma by 1) providing a civil tort remedy to otherwise remedyless plaintiffs, 2) providing incentives (avoidance of punitive damages) to employers to recognize and heed mandated public policy, and 3) vindicating established public policy when an employer transgresses it. *Kelsay*, 23 Ill. Dec. at 563, 384 N.E.2d at 357.

Barnes suggests that no retaliatory discharge claim should lie where the policy goals stated in *Kelsay* are satisfied by an alternate state or federal remedy. That view is not without support. *See Wheeler v. Caterpillar Tractor Co.*, 108 Ill.2d 562, 92 Ill.Dec. 561, 485 N.E.2d 372 (1985) (Moran J. dissenting). Moreover, the theory comports with the Illinois Supreme Court's recognition of the tort when alternative remedies exist.

In *Midgett v. Sackett-Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984) a plaintiff was allowed to proceed on a retaliatory discharge claim even though his claim was covered by a collective bargaining agreement. Similarly, in *Wheeler*, 91 Ill.Dec. at 565, 485 N.E.2d 376, a plaintiff was allowed to proceed on a retaliatory discharge theory even though he had a potential remedy under federal statute. Both cases suggest the tort should be recognized when recognition will further the policy goals stated in *Kelsay*. Applying that rationale to this lawsuit cuts against recognition of the tort of retaliatory discharge. *See Brudnicki v. General Electric Co.*, 535 F.Supp. 84, 89 (N.D.Ill.1982) (reaching same conclusion where Title VII claim was available).

■ Recognition of the tort in this case would further none of the policy goals stated in *Kelsay*. The survival of Count I and II present Plaintiffs with alternate remedies. Punitive damages are generally unavailable on Plaintiffs' federal and state claims. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Collins v. School District 189*, 115 Ill.App.3d 100, 70 Ill.Dec. 914, 915–16, 450 N.E.2d 387, 388–89 (5th Dist.1983); *Holda v. Kane County*, 88 Ill.App.3d 522, 43 Ill.Dec. 552, 555–56, 410 N.E.2d 552, 555–556 (2d Dist.1980); *George v. Chicago Transit Authority*, 58 Ill. App.3d 692, 15 Ill.Dec. 896, 898–900, 374 N.E.2d 679, 681–83 (1st Dist.1978). And Plaintiffs' § 1983 claim will provide vindication of the policies behind the First Amendment and Article I, §§ 4 and 5 of the Illinois Constitution. *See generally Elrod*, 96 S.Ct. at 2680–87 (patronage infringes freedoms of speech and association as well as "deeper traditions of democracy embodied in First Amendment.") In light of these considerations, the Court does not believe the Illinois Supreme Court would extend the tort of retaliatory discharge to the facts in this case. Barnes' motion to dismiss Count IV is granted.

### Conclusion

In sum, then, Barnes' motion to dismiss Count II is denied. However, his motion to dismiss Counts III and IV is granted.

IT IS SO ORDERED.