FRANKLIN CROSS, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—03—0408

Opinion filed August 30, 2004.

Robert A. Wolf and John W. Norris, both of Wolf & Norris, of Chicago, for appellant.

Mara S. Georges, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Franklin Cross, was discharged from his position as a probationary laborer in the Chicago Department of Water. He subsequently brought this action alleging that his discharge had been in retaliation for exercising his rights pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)). After discovery, defendant, the City of Chicago (the city), filed its first motion for summary judgment, arguing that plaintiff had adduced no evidence establishing a causal connection between the exercise of his rights under the Workers' Compensation Act and his termination. The circuit court granted the city's motion. We reversed and remanded, holding that a question of fact existed on that issue.[1]

On remand, the parties filed cross-motions for summary judgment. The city argued that under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 2002)) (hereinafter Tort Immunity Act), it is immune from liability for discretionary policy choices regarding whether to terminate its probationary personnel. Plaintiff argued that the evidence established each element of retaliatory discharge as a matter of law. The circuit court granted the city's motion and denied plaintiff's

---

[1]See *Cross v. City of Chicago*, No. 1—96—1857 (September 10, 1997) (unpublished order under Supreme Court Rule 23).

cross-motion. Plaintiff now appeals. For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

The underlying facts of this case were set out in detail in our order deciding the previous appeal in this matter. *Cross v. City of Chicago*, No. 1—96—1857 (September 10, 1997) (unpublished order under Supreme Court Rule 23) (hereinafter *Cross I*). As a result, we will only briefly summarize them here.

The record shows that on August 10, 1992, plaintiff was hired as a probationary career service laborer in the Chicago Department of Water (water department). As a probationary employee, plaintiff was required to successfully complete a six-month probationary period. By October of 1992, plaintiff's immediate supervisors and his district foreman, Robert Green, had filed reports documenting what they regarded as plaintiff's poor work performance, bad attitude, sexually harassing conduct, and insubordination. In those reports, plaintiff was described as a worker whose behavior was disruptive, who lacked motivation, and whose work was substandard. On October 30, 1992, Green forwarded the reports and his own memorandum to first deputy commissioner Donald Tomczak. On November 2, 1992, deputy commissioner Tomczak forwarded the reports to water department commissioner John Bolden, who had the ultimate authority to terminate the employment of probationary career service employees of the water department. With the reports, deputy commissioner Tomczak included his own recommendation that plaintiff be terminated immediately. On November 4, 1992, Commissioner Bolden responded with a memorandum ordering that plaintiff be suspended without pay for 29 days and that he be strongly reprimanded.

Meanwhile, plaintiff filed a report claiming that he sustained an on-the-job injury on October 26, 1992, while he was excavating. Plaintiff had not reported the injury to his supervisor until October 28, 1992. In the injury report, plaintiff's supervisor indicated that he was not satisfied that the injury had occurred in the course of plaintiff's employment. Beginning October 28, 1992, plaintiff was examined and treated at MercyWorks Occupational Medicine Center. He was placed on duty disability on November 4, 1992.

On November 5, 1992, the day after Commissioner Bolden ordered plaintiff's suspension, Bolden received a copy of plaintiff's October 28, 1992, injury report. Based on the supervisor's indication that the injury was not work-related, Commissioner Bolden suggested further investigation of plaintiff's claimed injury.

On November 20, 1992, the Chicago city council's committee on finance (the Committee), which administers workers' compensation in

Chicago through its bureau of workmen's compensation,[2] denied plaintiff's claim for temporary total disability benefits because it believed that the medical condition for which plaintiff was requesting benefits was not causally connected to the alleged on-the-job injury. The Committee made this determination based, in part, on medical reports. The treating physician's report from MercyWorks indicated that plaintiff's reported symptoms were not consistent with the physician's own findings. The report also noted that plaintiff appeared to be magnifying his symptoms. In addition, plaintiff failed to appear for at least three of his scheduled appointments in a two-week period. The Committee also relied on a statement of plaintiff's coworker, Ed Formas, who worked with plaintiff on the date of the alleged injury. Formas stated that plaintiff had flagged traffic on the day of the alleged injury, plaintiff had not engaged in any excavation, and plaintiff had not engaged in any other activity that could have caused his injury.

Commissioner Bolden stated in his affidavit and his deposition testimony that, after being informed of the decision of the Committee and of the bases of that decision, he questioned the veracity of plaintiff's injury report. Bolden's determination that plaintiff had apparently falsified the injury report led him to reconsider his earlier decision to suspend plaintiff rather than terminate his employment with the city. On November 20, 1992, Bolden decided that plaintiff should be terminated. He stated that his decision was based on the reports of plaintiff's poor work performance, the allegations of sexual harassment, the indications that plaintiff had falsified the injury report, and the additional factor that all of those events had occurred within the first three months of plaintiff's probationary period. On November 30, 1992, Bolden notified the Department of Personnel that he intended to terminate plaintiff effective December 15, 1992, and on December 2, 1992, he signed a letter informing plaintiff of the decision to terminate his employment as a probationary employee with the Department of Water.

During the period between plaintiff's alleged injury and the termination of his employment, plaintiff filed an "Application of Adjustment of Claim" (workers' compensation claim) with the Illinois Industrial Commission (IIC). He apparently did not inform anyone at the city that he had done so, and it is unclear when the city received notice of that filing. The city claims that none of the people involved in the decisions that led to plaintiff's discharge were aware, at the time the decisions were made, that plaintiff intended to file or had already filed a claim with the IIC. In his affidavit, Commissioner

---

[2]See Chicago Municipal Code §§ 2—152—420 to 2—152—450 (2001).

Bolden stated that at the time of the termination decision, he had no knowledge or information that plaintiff intended to file or had filed a workers' compensation claim. Foreman Green stated in his affidavit that when he submitted the reports and his memorandum regarding plaintiff's on-the-job conduct, he had no knowledge or information that plaintiff intended to file or had filed a workers' compensation claim. The city subsequently settled plaintiff's worker's compensation claim with a lump-sum payment.

On or about September 3, 1993, plaintiff filed this lawsuit. Plaintiff alleged that he was discharged in retaliation for exercising his rights under the Workers' Compensation Act. After discovery, the city filed its first motion for summary judgment, arguing that plaintiff had come forward with no evidence that he was discharged in retaliation for filing a workers' compensation claim. The circuit court granted the city's motion. In *Cross I*, we reversed the judgment of the circuit court and held that a retaliatory motive could be inferred from the timing of plaintiff's termination and that the city's settlement of plaintiff's workers' compensation claim was at least some evidence that he was not terminated for filing a fraudulent claim, but in retaliation for exercising his rights. *Cross I*, slip op. at 9-10. The matter was remanded for the resolution of that question of fact. *Cross I*, slip op. at 10.

On remand, plaintiff filed a motion for partial summary judgment, and the city filed a second motion for summary judgment. The city argued that it is immune from liability for the commissioner's discretionary policy choices regarding whether to terminate probationary personnel. The circuit court initially denied the city's motion. After the city moved to reconsider, the court granted summary judgment for the city. Plaintiff now appeals.

## ANALYSIS

Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See, *e.g.*, 735 ILCS 5/2—1005(c) (West 2002); *Khalil v. City of Chicago*, 283 Ill. App. 3d 161, 162, 669 N.E.2d 1189, 1191 (1996). The grant of summary judgment is reviewed *de novo* (see *Delaney v. McDonald's Corp.*, 158 Ill. 2d 465, 467, 634 N.E.2d 749, 750 (1994)), and the evidence must be construed in the light most favorable to the nonmoving party (see *In re Estate of Roeseler*, 287 Ill. App. 3d 1003, 1013, 679 N.E.2d 393, 400-01 (1997)).

Plaintiff contends on appeal that in light of Commissioner Bolden's admissions that plaintiff's filing of the injury report was a cause

of plaintiff's discharge, there exists no question of fact that plaintiff was terminated for exercising his rights guaranteed under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2002)) and, therefore, his discharge violated a clear mandate of public policy. The city, on the other hand, contends that plaintiff's claim was barred by sections 2—201 and 2—109 of the Tort Immunity Act (745 ILCS 10/ 2—201, 2—109 (West 2002)), which provide immunity to governmental entities for discretionary policy decisions.

■ Section 2—201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 2002).

Section 2—109 of the Tort Immunity Act extends this protection to local governments by providing that a local public entity is not liable for an "injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 2002). Our supreme court held that "this broad discretionary immunity applies to the [local public] entities themselves." *Arteman v. Clinton Community Unit School District No. 15*, 198 Ill. 2d 475, 484, 763 N.E.2d 756, 762-63 (2002). The city thus argues that, by its plain language, the Tort Immunity Act immunizes the city from liability resulting from Commissioner Bolden's discretionary decision to discharge plaintiff.

■ Plaintiff disagrees with the city's position that the city is permitted, under the Tort Immunity Act, to violate public policy and engage in conduct otherwise prohibited by the Workers' Compensation Act. To the contrary, plaintiff argues that an action for retaliatory discharge may be maintained against a governmental body. Plaintiff specifically relies on the statutory protection against retaliatory discharge for filing a workers' compensation claim, under section 4(h) of the Workers' Compensation Act. The relevant portion of section 4(h) of the Workers' Compensation Act provides:

"It shall be unlawful for any employer *** to discharge or to threaten to discharge, or to refuse to rehire or recall *** an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2002).

Plaintiff argues that the Tort Immunity Act and the Workers' Compensation Act do not conflict and, when read together, clearly subject governmental bodies to liability for retaliatory discharge. Plaintiff maintains that the legislature, in passing the Tort Immunity Act, did not intend to insulate governmental entities from the

mandates of the Workers' Compensation Act, as evidenced by the express language of the Tort Immunity Act, which states in pertinent part:

> "Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee. *Nothing in this Act affects the liability, if any, of a local public entity or public employee based on:*
>
> * * *
>
> c). *The 'Workers' Compensation Act'*, approved July 9, 1951, as heretofore or hereafter amended." (Emphasis added.) 745 ILCS 10/2—101 (West 2002).

In the alternative, if the two statutes could be seen to be in conflict, plaintiff argues that this court must attempt to reconcile the words of the statutes to bring to fruition the intent of the legislature, which was not to insulate governmental entities from liability for violating the Workers' Compensation Act. Plaintiff emphasizes that section 2—201 of the Tort Immunity Act, principally relied on by the city, is a general statement of immunity and specifically recognizes that other statutory provisions may avoid its terms, since it contains a qualifier "[e]xcept as otherwise provided by Statute." Plaintiff thus argues that we should recognize the specific protection of the Workers' Compensation Act to prevail over the general grant of immunity under the Tort Immunity Act. Plaintiff, in sum, urges that the Tort Immunity Act should be interpreted narrowly, so as to not insulate the city from liability for violating the Workers' Compensation Act, and that the contrary interpretation would render the protections created by the Workers' Compensation Act a mere illusory promise to governmental workers.

Plaintiff overlooks the important policy considerations embodied in the Tort Immunity Act. The Tort Immunity Act serves to protect local public entities and public employees from liability arising from the operation of government. 745 ILCS 10/1—101.1(a) (West 2002); *Arteman*, 198 Ill. 2d at 479, 763 N.E.2d at 760. Since the operation of government necessarily encompasses the policy decisions made by a municipality (*West v. Kirkham*, 147 Ill. 2d 1, 11, 588 N.E.2d 1104, 1109 (1992)), it follows that decisions by municipal employees about how to best allocate resources and go about providing services, including the selection of employees who will provide those services for the benefit of the public, should not be unduly controlled by the threat of a tort judgment. Indeed, our supreme court has cautioned against a construction of the Tort Immunity Act that would entail "second-guessing" these important judgment calls or would require the decision maker to be "more concerned with avoiding possible litigation

than with using his best judgment to properly balance the competing interests." *West*, 147 Ill. 2d at 12, 588 N.E.2d at 1109.

Further, we disagree with plaintiff's couching his claim as one "based on" the Workers' Compensation Act. As the city points out, plaintiff's position has a fatal flaw. Plaintiff presupposes that his claim is statutory in nature and, therefore, is not barred by the Tort Immunity Act. Indeed, it would so appear from the language of section 4(h) of the Workers' Compensation Act. However, as our supreme court has stated, "nothing in section 4(h) expressly provides a remedy for an employee *** in the event that the terms of section 4(h) are violated." *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 34-35, 645 N.E.2d 877, 880 (1994). Rather, as the court in *Zimmerman* explained, the remedy lies in a *tort* action, namely, the *common law tort* of retaliatory discharge first recognized by our supreme court in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181, 384 N.E.2d 353, 357 (1978). See *Zimmerman*, 164 Ill. 2d at 33-34, 645 N.E.2d at 879.

This conclusion is corroborated by the fact that our supreme court did not limit the right of action for retaliatory discharge to the workers' compensation setting alone, but extended that right to discharges based on other grounds as well, so long as those other grounds were protected by "clearly mandated public policy." See, *e.g.*, *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 421 N.E.2d 876 (1981). There, the supreme court extended the tort of retaliatory discharge beyond its workers' compensation origins to provide a remedy to an employee fired for reporting criminal activity of a coworker. The court explained:

"By recognizing the tort of retaliatory discharge, *Kelsay* acknowledged the common law principle that parties to a contract may not incorporate in it rights and obligations which are clearly injurious to the public. (See *People ex rel. Peabody v. Chicago Gas Trust Co.* (1889), 130 Ill. 268, 294.) This principle is expressed forcefully in cases which insist that an employer is in contempt for discharging an employee who exercises the civic right and duty of serving on a jury. (*People v. Vitucci* (1964), 49 Ill. App. 2d 171, 172; *People v. Huggins* (1930), 258 Ill. App. 238, 243; see also Ill. Rev. Stat. 1979, ch. 38, par. 155—3 (making it a contempt of court to fire or discipline an employee for attending court when subpoenaed as a witness).) *** When a discharge contravenes public policy in any way the employer has committed a legal wrong. However, the employer retains the right to fire workers at will in cases 'where no clear mandate of public policy is involved' (*Leach v. Lauhoff Grain Co.* (1977), 51 Ill. App. 3d 1022, 1026)." *Palmateer*, 85 Ill. 2d at 129-30, 421 N.E.2d at 878.

Accord *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 485 N.E.2d 372 (1985) (former employee stated a cause of action for retaliatory

discharge, where he was terminated in retaliation for refusing to work in the handling of a live radioactive substance, while the operations were conducted in violation of federal regulations promulgated by the Nuclear Regulatory Commission).

Plaintiff urges that in the case of *Boyles v. Greater Peoria Mass Transit District*, 113 Ill. 2d 545, 499 N.E.2d 435 (1986), our supreme court explicitly permitted a suit for retaliatory discharge against a local public entity, notwithstanding the immunity provisions of section 2—201 of the Tort Immunity Act. Plaintiff's reliance on *Boyles* is misplaced. In *Boyles*, a former employee of the mass transit district brought an action against the district and other defendants, alleging that she was discharged in retaliation for filing a claim under the Workers' Compensation Act and seeking compensatory and punitive damages. *Boyles*, 113 Ill. 2d at 547, 499 N.E.2d at 435. The plaintiff was a union member covered by a collective bargaining agreement. *Boyles*, 113 Ill. 2d at 551, 499 N.E.2d at 437. The district moved to dismiss the two counts of the complaint pertaining to it, arguing that the tort of retaliatory discharge is available only to persons employed at will, and not to employees, such as the plaintiff, who were protected by a collective bargaining agreement. *Boyles*, 113 Ill. 2d at 548, 499 N.E.2d at 436. The trial court denied the district's motion, but certified for interlocutory appeal the question as to whether an employee covered by a collective bargaining agreement providing grievance and arbitration procedures for wrongful discharge could maintain a common law action for retaliatory discharge against the employer. *Boyles*, 113 Ill. 2d at 548, 499 N.E.2d at 436.

While *Boyles* was pending on interlocutory appeal[3] in the appellate court, our supreme court announced its decision in *Midgett v. Sackett-Chicago, Inc.*, 105 Ill. 2d 143, 473 N.E.2d 1280 (1984), answering the same question as that certified by the trial court in *Boyles* in the affirmative, that a union employee may bring a cause of action for retaliatory discharge, independent of the employee's collective bargaining agreement. *Midgett*, 105 Ill. 2d at 150, 473 N.E.2d at 1283-84. The appellate court granted the district leave to file a supplemental brief setting forth its position in view of *Midgett. Boyles*, 113 Ill. 2d at 548-49, 499 N.E.2d at 436. This time, the district argued that the rationale underlying *Midgett* was to allow both the union and ''at-will'' employees to seek punitive damages. *Boyles*, 113 Ill. 2d at 549, 499 N.E.2d at 436. The district maintained that because it was not subject

---

[3]Pursuant to Rule 308 (87 Ill. 2d R. 308).

to punitive damages under section 2—102[4] of the Tort Immunity Act, no cause of action should lie. *Boyles*, 113 Ill. 2d at 549, 499 N.E.2d at 436. In *Midgett*, our supreme court had emphasized the significance of allowing punitive damages against the offending employer, explaining that in the absence of punitive damages, the employee's remedy is incomplete and there is little to discourage the practice of retaliatory discharge. *Midgett*, 105 Ill. 2d at 149-50, 473 N.E.2d at 1283-84. The appellate court disagreed that the district's position was supported by *Midgett*. *Boyles*, 113 Ill. 2d at 549, 499 N.E.2d at 436.

The district subsequently appealed to the supreme court. The original question certified by the trial court was thus broadened to encompass two issues: (1) whether the district, as a municipal corporation and pursuant to section 2—102 of the Tort Immunity Act, was immune from punitive damages, and (2) if immune from punitive damages, could it "still be sued for the tort of retaliatory discharge." *Boyles*, 113 Ill. 2d at 549, 499 N.E.2d at 436. On the first issue, our supreme court held that, regardless of whether the plaintiff could prove discharge in retaliation for filing a workers' compensation claim, section 2—102 of the Tort Immunity Act precluded the plaintiff from recovering punitive damages from the district. *Boyles*, 113 Ill. 2d at 554, 499 N.E.2d at 439. On the second issue, the court held:

> "[U]nder appropriate circumstances, an employee may bring an action for retaliatory discharge against a local public entity employer for compensatory damages, even though the public entity is not subject to an award of punitive damages. Under our holding, only the damages available are restricted; the cause of action in tort for retaliatory discharge remains unchanged." *Boyles*, 113 Ill. 2d at 555-56, 499 N.E.2d at 439.

It is this passage that plaintiff chiefly relies on in support of his position.

It is clear from the foregoing that plaintiff's reliance on *Boyles* is misleading. As noted, the procedural context in *Boyles* was the disposition of issues certified for interlocutory appeal. Accordingly, *Boyles* only considered whether a municipal corporation was subject to punitive damages and, if not, whether as a consequence, given the reasoning of the supreme court in *Midgett*, there would be any viability to an action limited solely to compensatory damages. As noted, the court in *Midgett* had explained that, in the absence of punitive damages, the

---

[4]Section 2—102 of the Tort Immunity Act provided at that time:
"Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in an action brought directly against it by the injured party." Ill. Rev. Stat. 1983, ch. 85, par. 2—102.

employee's remedy is incomplete and there is little to discourage the practice of retaliatory discharge:

> " 'In the absence of the deterrent effect of punitive damages there would be little to dissuade an employer from engaging in the practice of discharging an employee for filing a workmen's compensation claim[.] *** The imposition on the employer of the small additional obligation to pay a wrongfully discharged employee compensation would do little to discourage the practice of retaliatory discharge, which mocks the public policy of this State ***[.] In the absence of other effective means of deterrence, punitive damages must be permitted ***.' " *Midgett*, 105 Ill. 2d at 149-50, 473 N.E.2d at 1283, quoting *Kelsay*, 74 Ill. 2d at 186-87, 384 N.E.2d at 359.

Consequently, having decided, as noted above, that the plaintiff in *Boyles* was precluded under section 2—102 of the Tort Immunity Act from recovering punitive damages, our supreme court then proceeded to respond to the second issue by stating that the unavailability of punitive damages does not preclude the maintenance of an action for retaliatory discharge "under appropriate circumstances." *Boyles*, 113 Ill. 2d at 555-56, 499 N.E.2d at 439.

■ In light of the foregoing statement, it cannot be said that our supreme court intended to limit the immunity of a local public entity to exemption from punitive damages under section 2—102 and not permit the protection of the general immunity provisions of section 2—201. In that regard, we note that the question of general immunity under section 2—201 was never certified on appeal and the supreme court never purported to consider or discuss the impact of that section. Moreover, nothing in *Boyles'* discussion and holding is inconsistent with the potential applicability of section 2—201. In this respect, it is important to remember that the immunity of section 2—201 is not all-pervasive, but only applies to protect a governmental entity and its employees from liability for an injury resulting from an act of a public employee in the exercise of a discretionary policy determination. See *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 1181 (1998) (both elements are required—a determination of policy and an exercise of discretion). In contrast, ministerial acts are generally not entitled to immunity. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 194, 680 N.E.2d 265, 272 (1997).

With the foregoing in mind, it becomes clear that in holding that there is a right to compensatory damages "under appropriate circumstances," *Boyles* is in all likelihood alluding to those circumstances that are not precluded under section 2—201, namely, where

the firing was ministerial. The whole purpose of that statement was not designed to elucidate the circumstances which would permit compensatory damages to be recovered but rather to establish that, contrary to district's argument, the right to compensatory damages is not wedded to the right to punitive damages. Because, as noted, the issue of immunity under section 2—201 was not raised on appeal, *Boyles* left the boundaries of the preclusive effect of that section open-ended, but indicating only that there are circumstances where an employee's action for retaliatory discharge against a local public entity employer may not be barred.

■ We further note that if plaintiff's interpretation of *Boyles* was given credence, it would eliminate the applicability of section 2—201 with respect to any action for retaliatory discharge against a governmental entity. Such construction would fly in the face of the clear subsequent holdings of our supreme court that an action for retaliatory discharge, even discharge in retaliation for filing a workers' compensation claim, is a common law tort (*Zimmerman*, 164 Ill. 2d at 45, 645 N.E.2d at 885), which would clearly be covered by the general immunity provisions of section 2—201. Any attempt to preclude the application of those immunity provisions would "impermissibly elevate[ ] a common law duty over an applicable statutory immunity." *Arteman*, 198 Ill. 2d at 487, 763 N.E.2d at 764. In *Arteman* the supreme court stated:

> "[W]e lack the power to restrict the [Tort Immunity] Act's protective scope *** (see *Henrich* [*v. Libertyville High School*], 186 Ill. 2d [381,] 394 [(1998)] ('The responsibility for the justice or wisdom of legislation rests upon the legislature'); *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 220 (1983) (statutes should not be rewritten by this court to conform to its idea of public policy))." *Arteman*, 198 Ill. 2d at 488, 763 N.E.2d at 765.

It would thus be anomalous to suppose that the supreme court in *Boyles* intended to casually override the applicability of section 2—201 without ever discussing that section or attempting to explain or justify its reasons for doing so.

Lastly, we note that in his briefs on appeal plaintiff neither raised nor argued that the city's act in firing him would otherwise fall outside the protective ambit of section 2—201, namely, that the firing was not the result of a discretionary policy determination. Accordingly, this argument, which is not otherwise meritorious, is in any event waived pursuant to Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7) (points not argued are waived)).

For the reasons set forth above, the city is immune, as a matter of

law, from liability for Commissioner Bolden's decision to terminate plaintiff. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

McNULTY and McBRIDE, JJ., concur.