763 F.2d 211
 25 Ed. Law Rep. 159
 Edward J. STACHURA, Plaintiff-Appellant, (83-1344),
v.
Delores TRUSZKOWSKI, Defendant-Appellee.
Edward J. STACHURA, et al., Plaintiffs-Appellees, (82-1575),
Cross Appellees, (83-1345),
v.
MEMPHIS COMMUNITY SCHOOL DISTRICT, a public body, Board of
Education of the Memphis Community Schools, Herbert Kubish,
Genevieve Walters, Margaret Guoin, Timothy Kelley, Lawrence
Delekta, Ernest Beaudrie, Beatrice Dolan and Donald C.
Russell, Defendants-Appellants, (82-1575), Cross Appellants,
(83-1345).
 Nos. 82-1575, 83-1344 and 83-1345.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 25, 1984.
Decided June 3, 1985.
 
 Patrick J. Berardo, Thrun, Maatsch and Nordberg, Lansing, Mich., Patrick B. Mooney (argued), for plaintiff-appellant.
 Erwin B. Ellmann, Jeffrey A. Heldt (argued), Levin, Levin, Garvett and Dill, Southfield, Mich., for Edward J. Stachura, et al.
 Erwin B. Ellmann, Marshall W. Anstandig, Southfield, Mich., Jeffrey A. Heldt (argued), for defendant-appellee.
 Patrick B. Mooney (argued), Thrun, Maatsch and Nordberg, Lansing, Mich., Patrick J. Berardo, for defendants-appellants, cross appellants.
 Before EDWARDS* and MARTIN, Circuit Judges, and PECK, Senior Circuit Judge.
 GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.
 
 
 1
 Plaintiffs Edward Stachura and James MacDonald brought this action under 42 U.S.C. Sec. 1983. They alleged violations of plaintiff Edward Stachura's rights under the Fourteenth Amendment guarantees of liberty and property against the Memphis Community School Board, the Memphis Community School District, individual members of the School Board, Donald Russell, School Superintendent, during the period involved, Robert Phillips, school superintendent who succeeded Donald Russell, Charles Becker, Principal of the Memphis Middle School and two private citizens, Delores Truszkowski and Marilyn Moore. As to all of the individuals, plaintiffs alleged a conspiracy to violate their First Amendment rights as a teacher in the instance of Stachura and as a student in the instance of MacDonald. After a lengthy jury trial, the jury found in favor of plaintiff Stachura against most of the defendants (including Truszkowski) and against plaintiff MacDonald in all of his claims.
 
 
 2
 Two motions for judgment n.o.v. were filed. Truszkowski filed one such motion relying on the First Amendment. The School Board, its members and the named school officials also filed a motion for judgment n.o.v.
 
 
 3
 Judge Harvey granted judgment notwithstanding the verdict to defendant Truszkowski and plaintiff Stachura appeals. The jury had found $18,250 damages, $10,000 of which were punitive, against Truszkowski. Judge Harvey set these judgments aside. He held that Truszkowski was entitled to immunity on the basis of the right to petition contained in the First Amendment to the Constitution of the United States.
 
 
 4
 As to the second appeal named above, Stachura v. Memphis Community School Board, et al., the Board and other named defendants-appellants, appeal from a jury award of $321,000 punitive and compensatory damages.
 
 
 5
 Judge Harvey wrote a lengthy opinion dealing with the two appeals which have been taken in this case. We have reviewed that opinion and adopt and rely upon it. Additionally, however, we make the following comments about the two appeals.
 
 Stachura v. Truszkowski
 
 6
 Appellee Truszkowski was responsible for starting the sequence of events which transpired in these two cases. She organized and transmitted complaints to the School Board concerning Stachura's teaching of a Life Science class alleging improper teaching methods. Various other parents in the community joined her subsequently in vehement and continuing protests, based on unfounded rumors, leading directly to Stachura's removal. Although Truszkowski's role was pivotal in initiating these protests, it was made to the public body having charge of the educational system in the community concerned. As such, it was protected, as the District Judge held, by the right to petition encompassed in the First Amendment to the Constitution of the United States. In applicable part the First Amendment says: "Congress shall make no law ... abridging ... the right of the people ... to petition the government for a redress of grievances." While Ms. Truszkowski's role in these events is not a pretty one, we agree with the District Judge that it was a petition addressed to the proper authority and as a consequence, her actions were immunized from this suit by her First Amendment rights. Gorman Towers v. Bogoslavsky, 626 F.2d 607, 614-15 (8th Cir.1980); see California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); Eastern Railroad Presidents Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).
 
 
 7
 For these reasons, we affirm the judgment of the District Court in entering judgment notwithstanding the verdict thus setting aside the jury's verdict against defendant Truszkowski.
 
 
 8
 Stachura v. Memphis Community School District, et al.
 
 
 9
 As to Stachura's suit against the School Board and other defendants, we again find ourselves in agreement with the District Judge. The record in this case, when the motion for judgment notwithstanding the verdict is considered, must be viewed in the light most favorable to the party against whom the motion is made while giving that party the advantage of any reasonable inference the evidence can justify. The District Judge rejected defendants' position on plaintiff Stachura's First Amendment claim, his property interest claim, his liberty interest claim, the defense of good faith immunity and the question of punitive damages. As the District Judge pointed out, the text he used in teaching the Life Science class was approved by the School Board itself. The Life Science text included the following outline of Chapter 12 entitled "Reproduction."
 
 CHAPTER 12 REPRODUCTION 205
 The Nature of the Process 205
 
 10
 Cells can reproduce themselves . Cells can grow .
 
 Cells can specialize . Lesson Review
 Asexual and Sexual Reproduction 209
 
 11
 Asexual reproduction is simple and fast . Sexual
 
 
 12
 reproduction is more complicated . Sexual reproduction
 
 
 13
 is the more common method . Genes enter the
 
 
 14
 picture . Sexual reproduction is a safety mechanism
 
 
 15
 . Lesson Review
 
 Laboratory Activity
 
 16
 How Fast Does Yeast Reproduce Asexually? 212
 
 The Human Reproductive Process 215
 
 17
 Human beings reproduce only sexually . The male
 
 
 18
 system produces sperm . The female system has
 
 
 19
 three functions . The ovaries produce eggs and
 
 
 20
 estrogen . Other organs aid the reproductive process .
 
 
 21
 The female has a menstrual cycle . Lesson Review
 
 Growth, Birth, and Early Development 220
 
 22
 The embryo stage lasts two months . The fetus
 
 
 23
 develops into a baby . Labor causes birth . What are
 
 
 24
 the needs of a newborn baby? . Lesson Review
 
 Applying What You Have Learned 225
 
 25
 W. Smallwood, Challenges to Science: Life Science, McGraw-Hill, at ix (1978).
 
 
 26
 The films subsequently complained about had been shown for a number of years previous to the 78-79 school year. There is evidence in the record that in relation to various aspects of teaching human reproduction, Stachura had consulted with and secured the approval of his teaching methods and instructions from the Principal who was his superior officer in the school system. It appears, however, that when public protest arose neither the administrative officials of the school nor the School Board itself saw fit to defend the embattled teacher, or publicly to assume responsibility for their own decisions.
 
 
 27
 The meeting of the School Board on April 23, 1979 occurred after Stachura showed two films in his Life Science class. These films had been provided by the County Health Department and were shown pursuant to the direction of the School Principal. They were entitled "From Boy to Man" and "From Girl to Woman." They were shown separately to boys and girls and parental permission slips were required for viewing the films. They had been shown before to other seventh grade classes. Subsequent, however, to this showing, community discussion and protest proliferated leading the School Superintendent to warn Stachura that he was in "a heck of a lot of trouble" and to advise him to stay away from the scheduled April 23, 1979 School Board meeting to avoid the "angry hotheads." After Ms. Truszkowski read a statement to the Board, there were calls to tar and feather Stachura. A member of the board described the meeting as follows:
 
 
 28
 "At this time, the public was in total uproar and completely out of control. Two board members asked Mr. Kubisch to close meeting [sic], but did not to the best of my knowledge. One of the members of the public asked Mr. Kubisch what would you do if your child was in that class and he replied I wouldn't let my child go to that class. That put the meeting over the edge. People were hollering and shouting and the statement was made from the public that if Mr. Stachura was allowed to return to school in the morning, they would be there and picket the school. At this point of total panic, Mr. Russell stated in order to maintain peace in our school district, we would suspend Mr. Stachura with full pay and get this mess straightened out."
 
 
 29
 (App. 586-87.)
 
 
 30
 On April 24, 1979, Stachura was suspended by Superintendent Russell from the classroom and told that he would "never see the inside of a Memphis classroom again." Stachura's suspension pending "administration evaluation" was confirmed by the Board on May 21, 1979. Stachura engaged counsel who, on May 22, 1979, made representations to the Board regarding the allegations and his suspension. Stachura's counsel objected to the appointment of a committee of parents to investigate their own complaints, to the lack of any actual investigation or opportunity to respond to the allegations, to the lack of notice or guidelines regarding teaching methods which the Board alleged were improper and to the lack of any notice or hearing on the allegations prior to his summary suspension. The Board did not respond to the May 22, 1979 letter. On May 29, 1979, Superintendent Russell handed Stachura a "letter of reprimand," dated April 20, 1979, which was based on Truszkowski's unsubstantiated allegations. Stachura's counsel responded with a second letter dated May 31, 1979 reiterating Stachura's position and his request for immediate reinstatement to the classroom and removal of the "reprimand letter" from his personnel file. On June 4, 1979, the Board's attorneys responded by letter referring Stachura's attorney to an article in the Detroit Free Press for a statement of the Board's position on the matter. The Board subsequently informed Stachura that his rights under the contract would not be restored unless he accepted the "letter of reprimand."
 
 
 31
 We believe that Judge Harvey properly submitted to the jury the issues which were occasioned by the public attacks upon this teacher and by the letter of reprimand. We also hold that there was ample proof of actual injury to plaintiff Stachura both in his effective discharge by the Memphis Community School District and by the damage to his reputation and to his professional career as a teacher. Contrary to the situation in Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), relied on by appellant School District, there was proof from which the jury could have found, as it did, actual and important damages.
 
 
 32
 Turning directly to the appellate issues in Stachura's suit against the School District defendants, we hold, as indicated above, that plaintiff Stachura's First Amendment rights were infringed and that his exercise of "academic freedom" had followed rather than violated his superior's instructions. See Mailloux v. Kiley, 448 F.2d 1242, 1243 (1st Cir.1971) and Fern v. Thorp Public School, 532 F.2d 1120 (7th Cir.1976). We also agree with the District Judge and the jury that Stachura's property interests were invaded by his being effectively discharged. We likewise agree that the actions of the School Board "imposed a stigma on Stachura and foreclosed a definite range of employment opportunities" which plaintiff would otherwise have available. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Defendants' claims based on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and Vicory v. Walton, 721 F.2d 1062 (6th Cir.1983) are similarly without force. The holding in Parratt that the provision of post-deprivation remedies by state courts will, in some cases, suffice to provide all of the process due in property deprivation claims applies only where, as in Parratt, 451 U.S. at 540-542, 101 S.Ct. at 1915-1916, a pre-deprivation hearing was "impracticable" or "impossible." Here a pretermination due process hearing was both practical and feasible. Loudermill v. Cleveland Board of Education, 721 F.2d 550, 562 (6th Cir.1983), aff'd, --- U.S. ----, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The facts recited above also indicate clearly that Stachura was never given a fair opportunity to present his defense to the School Board nor do we believe that the Board's action can be held as a matter of law to have been taken in good faith.
 
 
 33
 From the point of view of this appellate court, our most substantial concern has been whether we should exercise the limited authority appellate courts have to enter a remittitur of the substantial damages awarded by this jury. Stachura suffered the embarrassment of extensive publicity in the local media which repeated the allegations against him, which included that he was a "sex maniac." Media coverage went around the world as the story was picked up by Stars and Stripes. Esquire magazine noted the event in its Dubious Achievement Awards. He and his family suffered the harassment of crank phone calls and refuse left on their porch, which continued up through the time of the trial three years after the events. He testified that the tension and pressure resulted in nightmares and sleepless nights and forced him to sleep on the living room floor so as not to disturb his wife. He became very withdrawn from friends and neighbors. Substantial as are the jury awards, it is clear to us that the damages that Stachura suffered will affect his professional career for his entire lifetime. While some may accept his vindication in court, there may still be many doors closed to him in his future which otherwise would have been open.
 
 
 34
 For these reasons and others spelled out in the Memorandum Opinion and Order of District Judge James Harvey, dated April 11, 1983, the judgments appealed from are hereby affirmed.
 
 
 
 *
 Hon. George Edwards took senior status January 15, 1985