Madeline NICKUM, Plaintiff,

v.

VILLAGE OF SAYBROOK,
et al., Defendants.

No. 96–1350.

United States District Court,
C.D. Illinois.

July 28, 1997.

David L. Stanczak, Dunn, Hundman & Stanczak, Bloomington, IL, for Madline Nickum.

Karen Hawthorne, Saybrook, IL, pro se.

James G. Sotos, Michael D. Bersani, Sally Wiggins, Hervas, Sotos & Condon, Itasca, IL, for Village of Saybrook.

Patrick J. Londrigan, Heyl, Royster, Voelker & Allen, Springfield, IL, for Ronald Stauffer, Ruby Johnson.

Mary W. McDade, Gregory A. Cerulo, Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for Richard Robbins, Russell Robbins.

Thomas Craig, Saybrook, IL, pro se.

## ORDER

MIHM, Chief Judge.

This matter is now before the Court on Magistrate Judge Robert J. Kauffman's Report and Recommendation ("R & R"), Defendant Village of Saybrook's Motion to Dismiss Counts I, III, IV and Portions of Count II of the Complaint [# 27], Defendant Richard Robbins' Motion to Dismiss Count X of the Complaint [# 23], Defendant Russell Robbins' Motion to Dismiss Count XI of the Complaint [# 21], and Defendants Ronald Stauffer and Ruby Johnson's Motion to Dismiss Counts V, VI, VII, VIII, and XIII [# 30].

On January 28, 1997, the Magistrate Judge filed a Revision to the Report and Recommendation ("Revision") [# 64]. The Revision addressed a typographical error in the summarizing paragraph of the original Report. The Revision also expanded on the original Report's reasoning behind the recommendation to deny the Village's Motion to Dismiss Count II of the Complaint.

For the reasons set forth below, the Court adopts the recommendations in the R & R as to Counts I, II, and III and rejects the recommendation as to Count IV; thus, the Village's Motion to Dismiss Counts I, III, and IV of the Complaint is DENIED, and the Village's Motion to Dismiss Count II is GRANTED in part and DENIED in part. The Court adopts the recommendation in the R & R as to Count V and rejects the recommendation in the R & R as to Count VI; thus, Johnson and Stauffer's Motion to Dismiss Counts V and VI is DENIED. The Court adopts for other reasons the recommendations in the R & R as to Counts VII and VIII; thus, Johnson and Stauffer's Motion to Dismiss Counts VII and VIII is GRANTED in part and DENIED in part. The Court adopts for other reasons the recommendation in the R & R as to Count X; thus, Richard Robbins' Motion to Dismiss Count X of the Complaint is GRANTED in part and DENIED in part. The Court

adopts for other reasons the recommendation in the R & R as to Count XI; thus, Russell Robbins' Motion to Dismiss Count XI of the Complaint is GRANTED in part and DENIED in part. The Court adopts the recommendation in the R & R as to Count XIII; thus, Johnson and Stauffer's Motion to Dismiss Count XIII of the Complaint is DENIED.

### Background

The Complaint includes the following allegations. Plaintiff, Madeline Nickum ("Nickum"), was hired on June 19, 1993 as Police Chief of the Village of Saybrook ("Village") by appointment of the then Village President with consent of the Village Board. (Complaint, ¶ 12). Upon commencing her employment, Nickum was given a copy of the Village's Law Enforcement Manual ("Manual") adopted by the Village Board as "binding" on September 12, 1988. *Id.* at ¶ 26. Nickum began her employment with the Village on June 19, 1993. *Id.*

Concerning officer discipline, the relevant sections of the Manual state the following:

¶ 706. Any officer ... who violates any provision of the rules and regulations or provisions of the Village regarding law enforcement personnel ... or who is guilty of un-officer like conduct, or who is incompetent to perform is [sic] duties is subject to appropriate disciplinary [action].

¶ 707—An officer shall be subject to reprimand, reduction in pay, suspension from duty, dismissal,. or any one or more of the foregoing penalties according to the nature and aggravation of his offense.

¶ 708. Whenever disciplinary action is taken or recommended ... a written report must be submitted immediately ... containing the following information:

(a) The full name and rank of the person being recommended for disciplinary action.

(b) The date(s), time(s), and location(s) of the misconduct.

(c) The section(s) number of this manual violated or a common description of the infraction if not covered in a section of this manual.

(d) A complete statement of the facts of misconduct.

(e) The punishment imposed or recommended.

(f) The written signature of the mayor.

¶ 709. When the investigation of any infraction has been completed, a copy of the facts including the recommended disciplinary action will be given to the offending officer. This report must include the rule or regulation the member is alleged to have violated, and the facts uncovered to substantiate the charge.

(Complaint at Ex. 2).

On June 14, 1995, Nickum, acting in her capacity as the Village's Police Chief, placed Danny Tomlinson ("Tomlinson") under arrest for driving under the influence of alcohol. *Id.* at ¶ 13. Tomlinson was also charged with resisting arrest and aggravated battery against Nickum. *Id.* Tomlinson is married to the niece of Ronald Stauffer ("Stauffer"), the Village President. *Id.* at ¶ 14.

On December 23, 1995, citizen Dwayne Kinsell told Nickum that citizen Lorraine Kingsley ("Kingsley") and citizen Norma Roth were overheard and recorded on his police scanner discussing a plan to defraud Country Companies Insurance Company by adding a fraudulent statement to an existing insurance claim. *Id.* at ¶ 415. He then gave Nickum the tape recording of their conversation ("the tape"). *Id.* Nickum sought the advice of Terri Dimmick ("Dimmick"), a McLean County Assistant State's Attorney, regarding what she should do with the tape. *Id.* at ¶ 16. Dimmick advised Nickum to use her discretion. *Id.* Follow this meeting, Nickum met with Sheriff Michael Emery, and they approached Kingsley with the tape. *Id.* at ¶ 17. Upon exposing the existence of the tape to Kingsley, Nickum gave her the tape recorded conversation and suggested to her that she amend her insurance claim. *Id.*

On January 25, 1996, the Federal Bureau of Investigation ("F.B.I.") investigated a report they had received concerning eavesdropping techniques employed by the Village Police Department. *Id.* at ¶ 18. After the F.B.I. finished its investigation, the United States Attorney's office concluded that Nickum had violated no federal laws in her handling of the tape. *Id.* at ¶ 19. In May of 1996, a similar finding concerning possible violations of state law was reported by the McLean County State's Attorney's office, the

Illinois Attorney General's office, and the Illinois State Police. *Id.* at ¶¶ 20–22.

At several Village Board meetings in the spring of 1996, members of the Village community, including Rudy Johnson ("Johnson"), a Trustee of the Village, Thomas Craig ("Craig"), Richard Robbins, Russell Robbins, and Karen Hawthorne ("Hawthorne"), voiced concerns that Nickum had been involved in incidents of illegal eavesdropping while employed by the Village, had violated suspects' civil rights, and had committed perjury during prior employment as a police officer. *Id.* at ¶¶ 48, 65. The Complaint alleges that prior to these meetings, Stauffer, Johnson, Craig, Russell Robbins, Richard Robbins, and Hawthorne conspired to make allegations at the meetings which they knew or had reason to know were false as well as to execute a campaign against Nickum in order to promote her dismissal. *Id.* at Counts VII–XII. Stauffer presided over the subsequent Village Board meetings, acting in his capacity as Village President. *Id. at* ¶ 49.

On April 30, 1996, Stauffer made the decision to prohibit Nickum from making arrests and patrolling or engaging in any other activity normally associated with police work. *Id.* at ¶ 59. Subsequently, she was told to refer all police-related matters to the McLean County Sheriff's Department. *Id.* at ¶ 60.

On May 14, 1996, Stauffer "published a 'Charge' against Nickum" ("charge") and presented it to the Village Board. *Id.* at ¶ 44. The charge stated that Nickum should be dismissed because she "had lost the public trust and confidence as well as the respect of and credibility with a great number of the citizens of the Village of Saybrook," leading to an alleged concern about the safety of both Nickum and the residents of the Village. *Id.* at ¶ 60. Nickum was not given a chance to respond to these allegations. *Id.* at ¶ 61. On May 20, 1996, the Village Board voted to approve Stauffer's charge and subsequently dismissed Nickum pursuant to the Municipal Code of the Illinois Statutes, 65 ILCS § 5/3.1–35–10.[1] *Id.* at ¶ 24. Her dismissal took effect on May 31, 1996 at 11:59 p.m. *Id.* at ¶ 45.

Stauffer "announced" that the Village would not pay Nickum her salary for the two weeks between May 14, 1996, the date of the charge, and May 31, 1996, the date of her dismissal. *Id.* at ¶ 90. Nickum received a check on June 3, 1996 from the Village stamped "paid in full." *Id.* at ¶¶ 88–89. The check included a note stating that the check represented Nickum's regular bi-weekly pay and was intended to be in full satisfaction of the Village's obligation to her. *Id.* at ¶ 89.

Nickum filed this suit on July 17, 1996. Defendant Richard Robbins filed a Motion to Dismiss Count X of Nickum's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Russell Robbins filed a similar Motion to Dismiss regarding Count XI. The Village filed a Motion to Dismiss Counts I, III, IV, and portions of Count II. Defendants Stauffer and Johnson filed a Motion to Dismiss Counts V, VI, VII VIII, and XIII again pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Discussion

#### I. Standard of Review

In resolving a motion to dismiss, this Court must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party. *Bontkowski v. First Nat. Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the Complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). This Court will dismiss a claim only if it is beyond doubt that no set of facts would entitle the Plaintiff to relief. *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 432 (7th Cir.1993).

#### II. Counts of the Complaint

##### A. Breach of Contract

Count I of the Complaint alleges that the Village's Manual created an employment con-

---

1. The Municipal Code of the Illinois statutes, § 5/3.1–35–10, states that any officer appointed by the mayor may be removed by the mayor "on

any written charge whenever the mayor ... is of the opinion that the interests of the municipality demand removal." 65 ILCS 5/3.1–35–10.

tract which the Village breached. The R & R states that the issue of contract formation in the context of employee manuals is determined by some standard of reasonableness relative to the language of a particular manual. Thus, this issue of whether a binding contract was formed should be left to the jury. The R & R recommended that the Village's Motion to Dismiss Count I of the Complaint be denied.

 Under Illinois law, the presumption of at-will employment is rebuttable upon a showing of contractual rights created by an employee handbook if certain requirements are met:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy.

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 490, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). An employee manual creates contractual rights only if specific disciplinary procedures are established by positive and mandatory language. *Doe v. First National Bank of Chicago*, 865 F.2d 864, 872 (7th Cir.1989).

In *Duldulao*, the plaintiff argued that the language of her employee handbook, distributed by her employer, required a formal written notice before an employee could be terminated. *Duldulao*, 106 Ill.Dec. at 10, 505 N.E.2d at 316. The employee handbook stated that dismissal of a non-probationary employee "*cannot occur* without proper notice and investigation." *Id.* at 12, 505 N.E.2d at 318 (emphasis in original). Further, the manual stated that such a dismissal would "*never* occur absent a prior written admonition and/or an investigation that has been properly documented." *Id.* (emphasis in original). The Supreme Court of Illinois opined that an employee reading this language would reasonably believe that, except in the case of a very serious offense, he or she would not be terminated without prior written warnings. *Id.* at 13, 505 N.E.2d at 319. Thus, the Illinois Supreme Court held that this language was binding on the employer, and a contract had been formed upon Duldulao's continuing to work. *Id.*

In *Doe*, the plaintiff argued that a memorandum and an employee manual circulated by her employer detailing proper grounds for dismissal served as an offer to contract and that her subsequent dismissal for reasons not included in that memorandum or that manual constituted a breach of contract. *Doe*, 865 F.2d at 872–73. The Seventh Circuit rejected her argument, distinguishing it from *Duldulao* because the language contained in the memorandum and employee manual was not binding on the employer. *Id.* Instead, the court stated that the language of the manual was only "informational in tone" and thus not "sufficiently promissory in nature to create enforceable rights in Illinois." *Id.*

 In the present case, Nickum alleges that the language of the Manual bound the Village to follow the disciplinary procedures articulated in it and that, by not doing so, the Village breached its contract with her. (Complaint, ¶¶ 25–32). The Village responds that since the language in the Manual provides for neither specific disciplinary procedures nor progressive discipline, the Manual cannot constitute an offer. (Village's Objections to the R & R at 7).

An examination of Manual illustrates that its language much more closely parallels the language in the *Duldulao* case than it does the language in Doe. The Manual states that a report of the facts, including the recommended disciplinary action, *will* be given to the offending officer when any disciplinary investigation is complete. (Complaint at Ex. 2, ¶ 708) (emphasis added). Further, the Manual states that "a written report *must* be submitted *immediately*" containing information on which any disciplinary action is taken or recommended. *Id.*, at ¶ 709 (emphasis added). This is the type of positive and mandatory language that served as the premise for the *Duldulao* court's conclusion that a contract had been formed between *Duldulao* and her employer. *Duldulao*, 106 Ill.Dec. at 12, 505 N.E.2d at 318. The "must" and "will" language used in the Village's Manual is not the type of discretionary

language utilized in *Doe* but, instead, is a concrete policy established by the Village guaranteeing its law enforcement officers certain procedures during any disciplinary action. Therefore, Nickum has sufficiently stated a claim for breach of contract.

The Court adopts the R & R's recommendation that the Village's Motion to Dismiss Count I of the Complaint be denied.

### B. *Property Interest*

■ Nickum claims that even though not all contract rights in employment rise to the level of property rights, the language of the Manual also created a property right in her position. *See Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir.1991). Counts III and V of the Complaint allege an unconstitutional deprivation, of that property right by the Village, (Complaint, ¶¶ 37–41), and by Stauffer. *Id.*, at ¶¶ 47–55. Nickum alleges that she was fired in violation of the provisions set out in the Manual, which listed the causes for which she could be disciplined. She further alleges that the procedures set out in the Manual were also violated when the Village dismissed her. *Id.* at ¶ 28. Lastly, she alleges that Stauffer acted for personal reasons outside the scope of his duties as mayor by unlawfully depriving her of her constitutionally protected property interest. By presenting a charge to the Village Board which he knew had no basis in fact, Nickum alleges Stauffer caused her dismissal solely for personal reasons. *Id.* at ¶¶ 51–52, 54.

Nickum alleges that her property rights in her job as Police Chief, as established through the language of the Manual, were violated for lack of due process by the Village and by Stauffer. *Id.* at ¶¶ 37–41, 47–55. She argues that the Village and Stauffer dismissed her for reasons not included in the Manual and absent any opportunity to respond to the charge. *Id.* at ¶¶ 28, 29.

The R & R concluded that the Manual sufficiently set forth a constitutionally protected property right. (R & R at 9). Because the Manual required at least some cause during the dismissal of an officer, the R & R recommended that the Motion to Dismiss Counts III and V be denied. *Id.*

The Village and Stauffer object to the R & R on the grounds that the vagueness and generality of the language in the Manual does not give rise to any effective limitations on the Village's discretion and therefore cannot establish in Nickum any property rights or job entitlement. (Village's Objection to R & R at 3). The Village and Stauffer further note that the Municipal Code of the Illinois Statutes provides that the mayor may remove any appointed officer "on any written charge whenever the mayor … is of the opinion that the interests of the municipality demand removal." *Id.* at 4, *citing* 65 ILCS 5/3.1–35–10. Lastly, the Village and Stauffer argue that the lack of a disclaimer is not dispositive on the issue of property rights arising out of the Manual. *Id.* at 5.

Not all contractual rights in employment rise to the level of property rights. *See Campbell*, 940 F.2d at 1113. A contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded. *Id.* To claim constitutionally cognizable property interests in employment, a plaintiff must have a legitimate claim to that interest, not merely a unilateral expectation of it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

There are no property interests in procedures themselves. *Fleury v. Clayton*, 847 F.2d 1229, 1231 (7th Cir.1988). A protected property interest in employment can arise from statutes, regulations, ordinances, or contracts. *Domiano v. Village of River Grove*, 904 F.2d 1142, 1147 (7th Cir.1990). To establish a constitutionally protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion. *Cain v. Larson*, 879 F.2d 1424, 1426 (7th Cir.1989).

Taking the facts alleged, Nickum cannot establish a property right in her job based *exclusively* on the *procedures* for disciplining an officer laid out in the Manual. (Complaint at Ex. 2, ¶ 708). Nickum alleges that when the Village failed to follow those procedures, it violated her due process rights. (Complaint ¶ 41). As stated in *Campbell*, the right to specific disciplinary procedures does not entitle someone to a constitutionally protect-

ed property right. *Campbell,* 940 F.2d at 1113. In *Campbell,* the Seventh Circuit ruled that an employee handbook which states a policy of progressive discipline does not, as a matter of constitutionally protected property, entitle an employee reading that handbook to the job itself. *Id.* The Seventh Circuit has similarly held that a statute describing interrogation procedures for police officers which were not followed in the process of dismissing an officer did not entitle that officer to that particular job as a matter of constitutionally protected property rights. *Cain,* 879 F.2d at 1427. Therefore, Nickum cannot claim that she had a protected property right in her job premised solely on the procedures laid out in ¶ 708 of the Manual.

■ The same can also be said about the absence of disclaimer language in the Manual. In *Campbell,* the Seventh Circuit reasoned that the absence of a disclaimer following a description of causes for dismissal did not create a *contractual* obligation between the employee and the employer which limited any disciplinary action by that employer. *Campbell,* 940 F.2d at 1113. Since the absence of a disclaimer cannot give rise to a contractual right, it also cannot be held that such an absence can give rise to a substantive entitlement. Thus, the lack of a disclaimer does not establish a property right in Nickum's job.

■ However, Nickum still has made sufficient allegations in her Complaint to establish a substantive property right based on the Manual. Paragraph 706 of the Manual states:

> Any officer ... *who violates any provision* of the rules and regulations or provisions of the Village regarding law enforcement personnel ... or *who is guilty of un-officer like conduct, or who is incompetent to perform is [sic] duties* is subject to appropriate disciplinary [action].

Manual, ¶ 706 (emphasis added).

This language (with special emphasis on the italicized words) places a substantive limitation on the Village's discretion in that it defines the type of cause for which a Village officer is subject to discipline. By using such language, the Village has created an entitlement to an officer's position unless that officer commits one of the general or specific indiscretions listed in ¶ 706. A similar conclusion was reached in *Fleury,* in which the Seventh Circuit found that an Illinois state statute listing grounds for which a medical license "may" be revoked created a property interest in a "blemishfree" license to practice medicine. *Fleury,* 847 F.2d at 1232. Therefore, for purposes of this Motion, her property right to bring this claim has been established.

■ The Village and Stauffer's reliance on 65 ILCS § 5/3.1–35–10 of the Municipal Code of the Illinois Statutes (which Stauffer cited as his authority when he dismissed Nickum), ignores the fact that ¶ 706 of the Manual, and not § 5/3.1–35–10, should have governed Nickum's dismissal. Ordinances adopted by Illinois municipalities supersede less stringent or conflicting state statutes unless the area regulated is of overriding state concern. *Kalodimos v. Village of Morton Grove,* 103 Ill.2d 483, 83 Ill.Dec. 308, 317, 470 N.E.2d 266, 275 (1984). Whether a particular issue is of predominantly state or local concern is determined with regard to the nature and severity of the problem, the units of government which have the most vital interest in its resolution, and the role traditionally played by the local and statewide authorities in dealing with it. *Id.* Nickum's dismissal was a matter for the Village and not the state of Illinois. It was the more specific language of the Manual, and not § 5/3.1–35–10 of the Municipal Code of the Illinois Statutes, which should have dictated the "why" and "how" when Nickum was dismissed. As stated above, she was dismissed with apparent disregard of the language in ¶ 706 of the Manual.

The Court adopts the R & R's recommendation and denies the Village's and Stauffer's Motions to Dismiss Counts III and V of the Complaint for the reasons set forth above.

### C. *Liberty Interest*

■ Nickum alleges in Counts IV and VI of the Complaint an unconstitutional deprivation of liberty interest by the Village, (Complaint, ¶¶ 42–46), and by Stauffer, *Id.* at ¶¶ 56–62, based on the manner in which she was dismissed. Nickum alleges in her Complaint that at town meetings in May 1996,

members of the Village community came forward and voiced their complaints about her and the Village Police Department. *Id.* at ¶¶ 48, 65. In light of these meetings, Stauffer published a charge gainst Nickum and presented it to the Village Board on May 14, 1996. *Id.* at ¶ 44.[2] On May 20, 1996, the Village Board voted to uphold Stauffer's charge to dismiss Nickum according to the Municipal Code of the Illinois Statutes, 65 ILCS § 3.1–35–10. *Id.* at ¶ 24. Her dismissal took effect on May 31, 1996 at 11:59 p.m. *Id.* at ¶ 45.

The Village argues that Nickum has not been deprived of any liberty interest because her opportunities in the *field* of police work were not foreclosed by the Village's actions. (Village's Memo. in Support of the Motion to Dismiss at 4). The Village suggests that any foreclosure of opportunity would not be in an occupation or calling but, rather, in the *position* of Police Chief. *Id.* Thus, Nickum's liberty interest was not infringed upon under the Fourteenth Amendment. *Id.*

The R & R concluded that the charge signed by Stauffer and ratified by the Village Board only amounted to a charge of incompetence and thus did not intrude on Nickum's liberty interest. (R & R at 10). The R & R further stated that if the discharge made Nickum unable to pursue other employment, that inability was not due to an unconstitutionally imposed stigma. *Id.* The R & R therefore recommended that Counts IV and VI of the Complaint concerning Nickum's liberty interest be dismissed without prejudice. *Id.*

 Damage to a person's reputation—professional or personal—does not, without more, implicate a Fourteenth Amendment liberty interest. *Paul v. Davis,* 424 U.S. 693, 702, 96 S.Ct. 1155, 1161, 47

L.Ed.2d 405 (1976). A direct charge of incompetence is not enough to implicate a liberty interest. *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1349 (7th Cir.1995). "[M]inor diminutions" in opportunities are also not sufficient to require due process. *Jungels v. Pierce,* 825 F.2d 1127, 1131 (7th Cir.1987). Rather, damage to reputation in the employment context rises to the level of a constitutional deprivation of liberty interest only where:

> (1) the individual's good name, reputation, honor, or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities.

*Munson v. Friske,* 754 F.2d 683, 693 (7th Cir.1985).

In order to prevail on a claim of unconstitutional deprivation of liberty interest a plaintiff must prove:

> [A] tangible change in his status (i.e. dismissed from a job or eligibility for one). *Doe v. U.S. Dept. of Justice,* 753 F.2d 1092, 1105 (D.C.Cir.1985) *citing Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); that the charges against him are false; *see Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977); that the charges were stigmatic; *Bishop v. Wood,* 426 U.S. 341, 347–49, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *see also Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547 n. 13, 105 S.Ct. 1487, 1496 n. 13, 84 L.Ed.2d 494 (1985); that the charges were published or publicly disseminated; *see Yatvin v. Madison Metropolitan School District,* 840 F.2d 412, 417 (7th Cir.1988); *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707; and that the plaintiff

---

2. The charge read:
 The President of the Board of Trustees for the Village of Saybrook is the chief administrative officer of the police department of the Village of Saybrook and has the authority to remove any police officer on any written. charge when he is of the opinion that the interests of the municipality demand removal.
 I am greatly concerned about the safety of the residents and of Ms. Madeline Nickum as a result of events of the last few months. Tensions in the Village are at a peak. The fact that a large number of residents have attended at least the last four Village Board meetings to vent their frustration over the police situation concerns me. She has lost public trust and confidence as well as the respect of and credibility with a great number of the citizens of the Village.
 It is my opinion that the interest of the Village of Saybrook and its residents demand the removal of Madeline Nickum and I hereby remove her from her employment by the Village of Saybrook effective immediately.
 (Complaint at Ex. 1).

was deprived of a name-clearing hearing in the wake of these charges. *See Doe*, 753 F.2d at 1108; *Codd*, 429 U.S. at 627, 97 S.Ct. at 883.

*Dziewior v. City of Marengo*, 715 F.Supp. 1416, 1423 (N.D.Ill.1989).

Given the facts alleged in the Complaint, Nickum's opportunities in any capacity in the field of police work could be adversely affected by the charge as presented by Stauffer to the Village Board. What Nickum has alleged is neither damage from a simple charge of incompetence nor a mere diminution of opportunity, as was the case in *Jungels*. In *Jungels*, the Seventh Circuit found that termination from a "part-time, honorific" job as a member of a civil service commission, which did not serve as the plaintiff's livelihood, did not give rise to a liberty interest violation. *Jungels*, 825 F.2d at 1131. Conversely, the Seventh Circuit ruled in *Ratliff v. City of Milwaukee* that the specifics of a charge against a police officer, which included "untruthfulness, neglect of duty, and insubordination," were "so devastating" that the charge could have seriously damaged the plaintiff's standing in the community. *Ratliff v. City of Milwaukee*, 795 F.2d 612, 626 (7th Cir. 1986). Given this type of damage, the court reasoned, the plaintiff had a due process right to a hearing at which she could attempt to refute the charges. *Id.*

Nickum's dismissal much more closely resembles the factual circumstances in *Ratliff* than it does the situation in *Jungels*. The charge stated that Nickum had lost the respect, confidence, and credibility of the entire community. (Complaint at Ex. 2). These pronouncements implicate something more than the "inevitable stigma" resulting from a dismissal committed in the normal course of business. Nickum has alleged that the nature and severity of the charge is such that it represents a threat to her opportunity to obtain any new law enforcement position. The language in the charge crossed over the line from a mere accusation of incompetence to a charge that intruded on Nickum's liberty interest in employment in any future law enforcement position.

Nickum also alleges that she was afforded no chance to defend her name or professional reputation against these charges. *Id.* at ¶ 61. Such an opportunity is essential as a matter of due process when the charge against her might seriously damage her standing and association in the community. *See Roth*, 408 U.S. at 572–74, 92 S.Ct. at 2707.

Utilizing the test as articulated in *Dziewior*, Nickum has sufficiently pled a cause of action for a liberty interest violation. First, she has alleged a change in status given her dismissal. (Complaint, ¶ 24). Second, she has alleged that the charge against her was false and part of a conspiracy motivated by personal reasons rather than issued in the interest of the community. *Id.* at ¶¶ 44, 52. Third, she has alleged that the charge stigmatized her enough so as to prevent her from "obtaining other employment of comparable responsibility." *Id.* at ¶¶ 44, 46. *See Jungels*, 825 F.2d at 1131. Fourth, Nickum has alleged that the charge was "published" by Stauffer and presented to the Board in a public manner. (Complaint, ¶ 44). Lastly, she has alleged that she was deprived of an opportunity to defend herself against the charge. *Id.* at ¶ 61.

The Court rejects the recommendation in R & R concerning Nickum's liberty interest, and the Defendant Village and Stauffer's Motions to Dismiss Counts IV and VI of the Complaint are denied.

### D. Conspiracy to Commit Civil Rights Violations

Nickum alleges in Counts VII through XII of the Complaint that the individual Defendants, Village President Stauffer, Village Trustee Johnson, and citizens Craig, Richard Robbins, Russell Robbins, and Hawthorne, entered into a conspiracy to deprive her of her constitutionally protected rights in violation of 42 U.S.C. §§ 1983 and 1985(3). (Complaint, ¶¶ 63–85). Nickum alleges meetings took place between these parties at a hardware store in the Village for the purpose of influencing Village Board meetings. *Id.*

Nickum concedes that she cannot go forward at the present time with her claims based on § 1985(3). (Memo. of Law in Opposition to the Village's, Stauffer's and Johnson's Motions to Dismiss at 4). Therefore, the Court adopts the recommendation in the R & R, and her claims pursuant to § 1985(3),

found in Counts VII, VIII, X, XII, are dismissed with prejudice.

The R & R concluded that the individual Defendants "agreed to utilize" Village Board meetings as fora to make false allegations against Nickum. (R & R at 12). The R & R recommended that the Motions to Dismiss the § 1983 claim be denied, as Nickum has sufficiently alleged a conspiracy. *Id.* The R & R stated that the Seventh Circuit, in dicta, indicated possible application of the Noerr–Pennington doctrine to civil rights cases which would protect the conduct of the individual Defendants. Nevertheless, the R & R recommended that the individual Defendants' Motions be denied to avoid improper fact finding at this stage of the litigation. *Id.*

The individual Defendants (Richard Robbins, Russell Robbins, Ronald Stauffer, and Ruby Johnson) object to the R & R by raising several issues concerning both the existence of the alleged conspiracy with state actors and, if a conspiracy is found, their individual liability under that conspiracy. They first claim that the behavior of Russell Robbins, Richard Robbins, Craig, and Hawthorne concerning Nickum's dismissal is not actionable under § 1983 because the "defendants in this case have no actual authority over Nickum's job." (Russell Robbins' Memo. in Support of the Objection to Magistrate's R & R at 3). Therefore, what they did should not be considered state action. *Id.*

 "A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means." *Bell v. City of Milwaukee,* 746 F.2d 1205, 1255 (7th Cir. 1984), *quoting Hampton v. Hanrahan,* 600 F.2d 600, 620 (7th Cir.1979), *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). The principal elements of a conspiracy are an agreement between the parties "to inflict a wrong against or injury upon another" and "an overt act that results in damage." *Id., quoting Hampton,* 600 F.2d at 620. This requires a meeting of the minds between the conspirators; they must have shared the general conspiratorial objective. *Hampton,* 600 F.2d at 621.

 A conspiracy between private individuals and state actors under § 1983 must involve an "agreement on a joint course of action in which the private party and the state have a common goal." *Hughes v. Meyer,* 880 F.2d 967, 972 (7th Cir.1989), *quoting Gramenos v. Jewel Companies, Inc.,* 797 F.2d 432, 435 (7th Cir.1986). A private party can be sued under § 1983 only when "he is a willful participant in joint action with the State or its agents." *Gramenos,* 797 F.2d at 435, *quoting Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980). An allegation of conspiracy must include a "charge of joint action alleging some agreement between private and public actors to violate a constitutional right of the plaintiff." *Cunningham v. Southlake Center For Mental Health, Inc.,* 924 F.2d 106, 107 (7th Cir. 1991).

The individual Defendants cite several cases which are intended to provide analogous examples of public advocacy which were not considered state action pursuant to a § 1983 claim. See *Cunningham,* 924 F.2d at 108; *Stachura v. Truszkowski,* 763 F.2d 211, 213 (6th Cir.1985), *rev'd in part on other grounds sub nom., Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Evers v. Custer County,* 745 F.2d 1196, 1204 (9th Cir. 1984). Taking the facts alleged in the Complaint as true, these cases can be distinguished from the present case in that what the Village citizens allegedly did here was not advocacy meant to influence open debate but, rather, was a conspiracy involving municipal officials (Stauffer and Johnson) and certain Village citizens (Richard Robbins, Russell Robbins, Hawthorne, and Craig) for the purpose of depriving Nickum of her constitutional right to due process. (Complaint, ¶¶ 63–85).

In *Stachura,* the defendant had organized and vigorously pursued the dismissal of a teacher through a publicity campaign based on unfounded rumors and ardent public protest. *Stachura,* 763 F.2d at 213. The court found that although the defendant's actions were not "pretty," they amounted to nothing more than a petition to the proper authority and, as such, were protected under the First Amendment. *Id.*

In this case, Nickum has alleged that the individual Defendants, Russell Robbins, Richard Robbins, Craig and Hawthorne, were acting *in concert* with Stauffer and, as such, exercised control over her situation. She alleges a meeting of the minds at the hardware store meetings between private and public officials in order to effectuate the common goal of getting her dismissed. Therefore, she has sufficiently alleged a conspiracy between state actors, through municipal officials Stauffer and Johnson, and citizens Craig, Richard Robbins, Russell Robbins, and Hawthorne.

The individual Defendants also contend that each Defendant's actions are protected by the First Amendment right to petition the government for redress. This principle is embodied in the Noerr–Pennington doctrine. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Noerr–Pennington doctrine provides that the right to legitimately petition the government through a legislature, the judiciary, or an administrative agency is fundamental to the concept of representative democracy. *Noerr*, 365 U.S. at 138, 81 S.Ct. at 530; *Pennington*, 381 U.S. at 669–70, 85 S.Ct. at 1593. As such, it is constitutionally protected speech, no matter its motivation. *Id.*

Although the Noerr–Pennington doctrine was originally applied in the anti-trust context, its cloak of immunity has since been applied to other areas of law. *See, e.g., Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (applying Noerr–Pennington to action for copyright infringement); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir.1977) (finding shelter for defendants under Noerr–Pennington against a § 1985(3) claim for complaints made to the IRS).

The Noerr–Pennington doctrine has also been extended by other circuits in order to provide immunity to those sued for violations of civil rights under § 1983. In deciding *Video Intl. Prod., Inc. v. Warner–Amex Cable Communications Inc.*, 858 F.2d 1075 (5th Cir.1988), *cert. denied* 491 U.S. 906, 109 S.Ct.

3189, 105 L.Ed.2d 697 (1989), the Fifth Circuit ruled that Noerr–Pennington shielded defendants from liability in a civil conspiracy in violation of § 1983 because such an application served to protect the same constitutional interest protected in the context of anti-trust. *Video Intl.*, 858 F.2d at 1084. Similarly, the Eighth Circuit has held that private individuals were protected by Noerr–Pennington because their petitioning of the local zoning board was both legitimately executed and done for a legitimate purpose. *Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 615 (8th Cir.1980); *see also Evers*, 745 F.2d at 1204 (immunizing defendants under Noerr–Pennington against a § 1983 claim during the petitioning of county commissioners).

 In dicta, the Seventh Circuit has indicated that application of the Noerr–Pennington doctrine to § 1983 cases would get parties "off the hook" for conspiracy claims. *Creek v. Village of Westhaven*, 80 F.3d 186, 192 (7th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 180, 136 L.Ed.2d 120 (1996). In *Creek*, a homeowner's association, acting "in cahoots with" a local government, attempted to sue the Department of Housing and Urban Development in order to keep a racially diverse development from receiving subsidization. *Id.* at 189. The Seventh Circuit reasoned in *Creek* that had the homeowner's association still been party to the suit, and assuming its attempt at redress had been non-frivolous, its action would have been protected by the First Amendment. *Id.* at 192. This allusion to First Amendment protection, coupled with other circuits' willingness to extend Noerr–Pennington immunity to claims in the § 1983 context, leads this Court to the conclusion that Noerr–Pennington can be utilized against claims arising under § 1983.

The next step in the inquiry is whether the individual Defendants in this case can properly assert Noerr–Pennington immunity for their actions as alleged in Nickum's Complaint. The individual Defendants argue that what they engaged in was no more than classic political activity designed to effectuate a legitimate public goal. (Russell Robbins' Memo. in Support of Motion to Dismiss at 4).

The individual Defendants also assert that although their motivations for such activity may seem unethical or unworthy to some, that evaluation has no place in determining the applicability of the Noerr–Pennington doctrine to this case. (Richard Robbins' Memo. in Order to Support Defendant's Reply and Objection to R & R at 5).

Nickum responds that the individual Defendants' actions constitute a "sham" and thus, cannot be shielded by Noerr–Pennington. (Plaintiff's Response to Amendments to Defendants' Richard and Russell Robbins' Memo. in Support of Motion to Dismiss at 2). The "sham" exception to the Noerr–Pennington doctrine was first utilized in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). *California Motor* and its progeny establish that Noerr–Pennington immunity is not available to parties who abuse the petitioning process in order to harass a competitor rather than to effectuate a legitimate goal. In *California Motor,* the Court reasoned that Noerr–Pennington did not immunize the defendant's actions as alleged in the complaint because the those actions did not constitute a good faith attempt at redress through the courts but, instead, were done in order to deny the plaintiff "free and meaningful access" to those same courts. *Id.* To have allowed the defendants to invoke Noerr–Pennington would have contravened the sole purpose of the doctrine by essentially eliminating the very right to petition—this time on the side of the non-petitioner—that it was created to protect.

To establish the individual Defendants' actions as a "sham" under Noerr–Pennington, Nickum has to allege that the aim the individual Defendants purportedly sought, her termination, was not their real goal. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 500, n. 4, 108 S.Ct. 1931, 1937, n. 4, 100 L.Ed.2d 497 (1988). She also has to allege that their actions were instead meant only to inconvenience her. *See Video Intl. Prod., Inc.,* 858 F.2d at 1082. However, Nickum acknowledges that the entire purpose of the conspiracy was to remove her from her position as Police Chief. (Complaint, ¶ 64). Pursuit of such termination is well within the individual Defendants' rights as citizens. *See Stachura,* 763 F.2d at 213.

Therefore, since the end the individual Defendants were trying to achieve was legitimate, their actions cannot be characterized as a "sham" within the meaning of *California Motor.*

However, a common thread running through the case law on Noerr–Pennington is that in order to qualify for immunity, one must utilize legitimate means to get to the desired end. *California Motor,* 404 U.S. at 510–12, 92 S.Ct. at 612; *Stern,* 547 F.2d at 1343; *Gorman Towers,* 626 F.2d at 615; *Wheeling–Pittsburgh Steel Corporation v. Allied Tube & Conduit Corp.,* 573 F.Supp. 833, 837 (N.D.Ill.1983). It is essential that the means used by a party in petitioning the government not bar any other party's meaningful access to that same process. *California Motor,* 404 U.S. at 514–16, 92 S.Ct. at 614. Nickum alleges that Stauffer violated the Open Meetings Act and that said violation facilitated her dismissal by the Village Board. (Complaint, ¶ 65). She further alleges that she was given no chance to respond to the allegations levied against her. *Id.* at ¶ 61. Nickum alleges that Stauffer and the other Defendants abandoned the role of advocate as part of their conspiracy and became, instead, the arbiter of the dismissal process. This, she alleges, essentially eliminated her access to due process. Such transformation, if it occurred, is prohibited by *California Motor,* as it would have denied Nickum free and meaningful access to the dismissal process which would have given her the opportunity to defend herself against the charge.

Nickum has sufficiently alleged that the actions of the individual Defendants are not covered by the First Amendment. Consequently, the Court adopts the R & R's recommendation as to the existence of the conspiracy. As to the application of the Noerr–Pennington doctrine, that determination can only be properly made in this case in the context of a Motion for Summary Judgment. Therefore, Defendants' Motions to Dismiss Counts VII, VIII, X, and XI are denied as to the § 1983 claim.

### E. *Retaliatory Discharge*

█ Nickum has alleged in Count II of the Complaint that the Village wrongfully

discharged her in retaliation for the proper performance of her official duties as a police officer and the exercise of her constitutional right to free speech. Further, she alleges her dismissal was not done in the interest of the Village community. (Complaint, ¶¶ 34–36). Instead, she alleges she was dismissed as a direct result of her handling of the fraudulent claim recorded on the tape and her arrest of and subsequent testimony against Tomlinson. *Id.*

The Village argues that the tort of retaliatory discharge was only developed for circumstances where there is an absence of other remedies available to employees who are fired for exercising their rights. (Village Memo. in Support of Motion to Dismiss Counts I, III, IV, and Portions of Count II of the Plaintiff's Complaint at 5). The Village cites several cases in which courts have dismissed a retaliatory discharge claim finding that an alternative § 1983 claim provided adequate remedy to each plaintiff, thus making the retaliatory discharge claim superfluous. *Id. See Gutierrez v. City of Chicago*, 605 F.Supp. 973 (N.D.Ill.1985); *Cromley v. Board of Education*, 699 F.Supp. 1283 (N.D.Ill.1988); *Busa v. Barnes*, 646 F.Supp. 615 (N.D.Ill.1986).

Nickum responds to this by arguing that § 1983 is not a complete remedy for her because two of the three activities for which she was dismissed, her arrest of Tomlinson and her handling of the tape, were not exercises of federally protected rights but, instead, were done in the execution of a fundamental state policy. (Plaintiff's Memo. in Opposition to the Village's, Stauffer's and Johnson's Motions to Dismiss at 2, 3). Since § 1983 is a remedial mechanism for federal civil rights violations, Nickum argues it cannot provide her redress for dismissal based on the proper enforcement of state policies. *Id.*

The Revision to the R & R ("Revision") first states that the availability of other remedies is inconsequential in determining the merits of a § 1983 claim. (Revision at 5). The Revision bases its reasoning on *Midgett v. Sackett–Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984), in which the Illinois Supreme Court ruled that grievance procedures established by contract for union workers did not limit the availability of a retaliatory discharge claim to those workers. (Revision at 5). Because the Illinois Supreme Court failed to limit a retaliatory discharge claim in the face of other remedies, the Revision found no reason to apply such a limitation concerning a § 1983 claim. *Id.,*

Second, the Revision states that even if a § 1983 claim did preclude a retaliatory discharge claim, it would only do so if § 1983 provided an *adequate* remedy to a plaintiff. *Id.* at 6. As the Revision points out, punitive damages are not available under § 1983 in claims against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 267, 101 S.Ct. 2748, 2760, 69 L.Ed.2d 616 (1981) (establishing immunity for municipalities, as opposed to individuals, from punitive damages under § 1983); *Smith v. Wade*, 461 U.S. 30, 36, 103 S.Ct. 1625, 1629, 75 L.Ed.2d 632 (1983) (discussing the lack of availability of punitive damages against municipalities under § 1983). Since punitive damages are an important component of the policy rationale for retaliatory discharge, the Revision would seem to suggest that Nickum's relief would be incomplete as a matter of policy if she were only allowed to pursue her claim under § 1983. (Revision at 6).

█ The tort of retaliatory discharge was first announced in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 384 N.E.2d 353, 23 Ill.Dec. 559 (1978). In *Kelsay*, the Supreme Court of Illinois ruled that an employer is subject to tort liability for discharging an otherwise at-will employee in retaliation for an exercise of civic duties or rights. *Id.* To prove a claim for retaliatory discharge, a plaintiff must prove that the discharge was in retaliation for the employee's activities and that the discharge is a contravention of clearly mandated public policy. *Palmateer v. International Harvester Company*, 85 Ill.2d 124, 421 N.E.2d 876, 52 Ill.Dec. 13 (1981).

The Court finds the cases cited by the Village distinguishable from the present case in that the retaliations in those cases occurred in response to the exercise of constitutional rights and not in retaliation for the execution of mandated state policy. For example, in *Busa*, the plaintiff's claim under § 1983 arose out of a dismissal due to the exercise of his First Amendment right to

political affiliation. Therefore, the § 1983 claim sufficiently provided redress to the plaintiff. *Busa,* 646 F.Supp. at 616, 618. Similarly, in *Cromley,* the plaintiff's retaliatory discharge claim was dismissed only because the § 1983 claim provided for adequate vindication of the plaintiff's First Amendment rights. *Cromley,* 699 F.Supp. at 1298.

Section 1983 was established as a vehicle for the vindication of federal constitutional or statutory rights. *Busa,* 646 F.Supp. at 616. Nickum has alleged that her dismissal was based, at least in part, on her enforcement of state law with regard to her arrest of Tomlinson and her handling of the tape. Such enforcement of the state criminal code does not implicate constitutional or federal civil rights. Instead, that enforcement is an issue of state policy at its most basic and fundamental level. *Palmateer,* 52 Ill.Dec. at 16, 421 N.E.2d at 879. The protection of state policy is found in cases like *Kelsay,* not under the umbrella of § 1983. Taking the facts in the Complaint as true, Nickum's firing was a direct contravention of that policy because it was based on her enforcement of state law. Section 1983 offers Nickum no redress for her dismissal based on her enforcement of state law. Therefore, she must be allowed to pursue her claim under the theory of retaliatory discharge.

Nickum has agreed to re-plead her retaliatory discharge claim based on her First Amendment right to free speech for her testimony at Tomlinson's trial by converting it to a claim under § 1983. (Plaintiff's Memo. in Opposition to the Village's, Stauffer's and Johnson's Motion to Dismiss at 2).

Accordingly, the Court accepts the Revision's recommendation, and the Village's Motion to Dismiss Count II of the Complaint is denied as to Nickum's assertion that she was fired pursuant to her enforcement of state law. The Village's Motion to Dismiss Count II regarding Nickum's First Amendment claim is granted without prejudice to give Nickum the chance to re-plead in part under § 1983.

### F. *Unconstitutional Suspension*

██ Nickum alleges in Count XIII of the Complaint that Stauffer violated her Fourteenth Amendment right to due process by unconstitutionally suspending her without pay between May 14, 1996 and May 31, 1996. (Complaint, ¶¶ 86–92). Nickum claims that her suspension occurred without a post-deprivation hearing to afford her the opportunity to respond to the merits of the suspension and, as such, this violated her constitutional rights under 42 U.S.C. § 1983. *Id.* at ¶ 91.

The R & R recommended denial of Stauffer's Motion to Dismiss. Citing *Lolling v. Patterson,* 966 F.2d 230 (7th Cir.1992), and *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265, (1982), the R & R concluded that since neither Nickum nor Stauffer identified any post-deprivation hearing during which she could have responded to her suspension, she could prove a set of facts which would allow her to obtain relief. (R & R at 14).

Even upon a showing that a state official's act in suspending an employee without pay was "random and unauthorized," no violation of due process can be established unless the state fails to provide a meaningful post-deprivation remedy. *Lolling,* 966 F.2d at 234; *Logan,* 455 U.S. at 434–35, 102 S.Ct. at 1157.

Stauffer contends that since Nickum has alleged only random and unauthorized acts, she has an adequate state law post-deprivation remedy. (Stauffer's Memo. of Law in Support of Motion to Dismiss at 4). However, Stauffer fails to identify that remedy. Thus, Stauffer provides no basis for this Court to find that, accepting the facts as stated in the Complaint, Nickum was provided with any post-deprivation hearing.

Therefore, this Court adopts the recommendation made in the R & R and denies Stauffer's Motion to Dismiss Count XIII of the Complaint.

### Conclusion

Accordingly, for the reasons set forth above, the Court adopts the recommendations in the R & R as to Counts I, II, and III and rejects the recommendation as to Count IV; thus, the Village's Motion to Dismiss Counts I, III, and IV of the Complaint is DENIED, and the Village's Motion to Dismiss Count II is GRANTED in part and DENIED in part. The Court adopts the recommendation in the R & R as to Count V and rejects the recommendation in the R &

R as to Count VI; thus, Johnson and Stauffer's Motion to Dismiss Counts V and VI is DENIED. The Court adopts for other reasons the recommendations in the R & R as to Counts VII and VIII; thus, Johnson and Stauffer's Motion to Dismiss Counts VII and VIII is GRANTED in part and DENIED in part. The Court adopts for other reasons the recommendation in the R & R as to Count X; thus, Richard Robbins' Motion to Dismiss Count X of the Complaint is GRANTED in part and DENIED in part. The Court adopts for other reasons the recommendation in the R & R as to Count XI; thus, Russell Robbins' Motion to Dismiss Count XI of the Complaint is GRANTED in part and DENIED in part. The Court adopts the recommendation in the R & R as to Count XIII; thus, Johnson and Stauffer's Motion to Dismiss Count XIII of the Complaint is DENIED. This matter is referred to Magistrate Judge Robert J. Kauffman for further proceedings.